# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

CENTRO DE PERIODISMO INVESTIGATIVO,

    **Plaintiff,**

       v.

FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    **Defendant.**

**CIVIL NO. 17-1743 (JAG)**

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

    Congress giveth, Congress taketh away. This case is about the applicability of Puerto Rico law to the Financial Oversight and Management Board for Puerto Rico (the "Board"), and the extent of federal congressional power to make "needful rules and regulations" regarding the territories of the United States. Although an emotionally charged subject, the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA" or the "Act")[1] exemplifies Congress's broad powers to pass laws that affect territories where more than four million American citizens live.

    Plaintiff Centro de Periodismo Investigativo ("CPI") brought suit against the Board seeking access to documents within the Board's control pursuant to the First Amendment of the Constitution of the Commonwealth of Puerto Rico ("Commonwealth" or "Puerto Rico"). Docket No. 1 at 2. Before the Court is the Board's Motion to Dismiss based on two grounds. Docket No.

---

[1] PROMESA is codified at 48 U.S.C. § 2101 *et seq.* References to "PROMESA" in the remainder of this Opinion and Order are to the uncodified version of the legislation (i.e. reference to the uncodified sections).

22. First, the Board argues that under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 92 (1984), it is immune in federal court from claims seeking injunctive relief pursuant to Puerto Rico law. *Id.* at 5. Second, the Board contends that the right to access and inspect public documents pursuant to Puerto Rico law is preempted by PROMESA. *Id.* at 9. The Court holds that: (1) pursuant to its plenary powers, Congress waived, or in the alternative abrogated, the Board's sovereign immunity; and (2) PROMESA does not preempt Puerto Rico law granting access to public documents under the Board's control.

For the reasons stated below, the Court **DENIES** the Board's Motion to Dismiss. This case will be referred to a Magistrate Judge to establish case management deadlines for the production of the documents requested by CPI.

## BACKGROUND

In June 2016, Congress enacted PROMESA to address the ongoing financial crisis in Puerto Rico. *In re The Fin. Oversight & Mgmt. Bd. for P.R.*, 872 F.3d 57, 59 (1st Cir. 2017). The Act created the Board as an oversight entity designed to help Puerto Rico restructure its debts and regain fiscal stability. PROMESA §§ 101(a)-(b), 304(a). Pursuant to PROMESA, the Board was created as an entity within the Commonwealth. *Id.* § 101(c)(1). Among other things, PROMESA empowers the Board to oversee the development and execution of a "fiscal plan," and to commence quasi-bankruptcy proceedings to restructure Puerto Rico's debt under Title III. *In re The Fin. Oversight & Mgmt. Bd. for P.R.*, 872 F.3d at 59.

The Board must comply with several disclosure requirements under PROMESA. For example: (1) Section 101(h)(1) requires the disclosure of the bylaws, rules, and procedures adopted by the Board; (2) Section 104(e) requires the disclosure of "[a]ll gifts, bequests or devises and the

identities of the donors . . . within 30 days of receipt;" (3) Section 104(p) requires the disclosure of the findings of any investigation made pursuant to Section 104(o); and (4) Section 109(b) requires the disclosure of the financial interests of the Board's members and its staff. Finally, and perhaps the most important disclosure, the Board is required by Section 208 to submit an annual report to the executive and legislative branch of both the federal and local governments.

## STANDARD OF REVIEW

A defendant may move to dismiss an action against it for lack of federal subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *accord FDIC v. Caban-Muniz*, 216 F. Supp. 3d 255, 257 (D.P.R. 2016). Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating its existence by a preponderance of the evidence. *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009). In assessing a motion to dismiss for lack of subject-matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998) (citing *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 1 (1st Cir. 1987)); *see Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 17 (1st Cir. 2013). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Acosta-Ramirez v. Banco Popular de P.R.*, 712 F.3d 14, 18 (1st Cir. 2013).

"Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." *Acosta-Ramirez*, 712 F.3d at 18. A court must dismiss the action if, at any time, it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1)

when the Court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996); *accord Prestige Capital Corp. v. Pipeliners of P.R., Inc.*, 849 F. Supp. 2d 240, 247 (D.P.R. 2012).

## ANALYSIS

The Board argues that dismissal is warranted based on two grounds. First, it argues that this Court lacks subject matter jurisdiction under the Eleventh Amendment. Docket No. 22 at 10. Second, even if this Court has jurisdiction, the Board argues that the right to access public documents pursuant to Puerto Rico's Constitution is preempted by PROMESA. *Id.* at 14. For the reasons stated below, the Court holds that: (1) Congress waived the Board's sovereign immunity; (2) in the alternative, the Board's sovereign immunity was abrogated by Section 106(a) of PROMESA; and (3) the right to inspect public documents pursuant to Puerto Rico's Constitution is not preempted by PROMESA.

In order to understand how Congress can create legislation like PROMESA for Puerto Rico, and to serve as a foundation to the sections below, the Court finds it necessary to explain Congress's sweeping power under the Territorial Clause of the U.S. Constitution.

### I.     Congress's Plenary Powers over the Territories

In relevant part, Article IV of the U.S. Constitution states that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ." U.S. Const. art IV, § 3, cl. 2. The Supreme Court has interpreted this clause to give Congress plenary[2] powers over the territories. *See Commonwealth of*

---

[2] "Plenary" is defined as "[f]ull; complete; entire." PLENARY, BLACK'S LAW DICTIONARY (10th ed. 2014).

*Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1876 (2016) (noting that pursuant to U.S. Const., art. IV, § 3, cl. 2, "Congress has broad latitude to develop innovative approaches to territorial governance."); *Harris v. Rosario*, 446 U.S. 651, 651-52 (1980) (per curiam) (finding that, under the powers vested in art. IV, § 3, cl. 2, Congress "may treat Puerto Rico differently from States so long as there is a rational basis for its actions."); *Torres v. Commonwealth of Puerto Rico*, 442 U.S. 465, 470 (1979) ("Congress may make constitutional provisions applicable to territories in which they would not otherwise be controlling.") (citation omitted); *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 586 n.16 (1976) ("The powers vested in Congress by Const., Art. IV, § 3, cl. 2, to govern Territories are broad.") (citations omitted); *Palmore v. United States*, 411 U.S. 389, 403 (1973) ("In legislating for [territories], Congress exercises the combined powers of the general, and of a state government.") (quotation marks and citation omitted); *De Lima v. Bidwell*, 182 U.S. 1, 196 (1901) ("Congress has full and complete legislative authority over the people of the territories and all the departments of the territorial governments.") (internal quotation marks and citation omitted); *United States v. Kagama*, 118 U.S. 375, 379–80 (1886) (noting that the powers conferred to a territorial government by Congress could "be withdrawn, modified, or repealed at any time."); *First Nat. Bank v. Yankton Cty.*, 101 U.S. 129, 133 (1879) (noting that Congress "has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments."); *United States v. Gratiot*, 39 U.S. 526, 537 (1840) (noting that "power over the [territories] is vested in Congress by the Constitution, without limitation."). Thus, our jurisprudence makes it clear that Congress's power over Puerto Rico is plenary.

Congressional plenary power over the territories can be delegated to the local territorial government, but can never be relinquished. *See Cincinnati Soap Co. v. United States*, 301 U.S. 308, 318

(1937) (explaining that, while the power of the federal government decreases when the powers of a territory increase, "the authority which confer[s] additional power" to the territory can "at any time" be withdrawn). Congress can enact a federal statute that organizes a territory and delegate power to the territorial government, but cannot renounce its powers over the territories forever. *See Dorsey v. United States*, 567 U.S. 260, 274 (2012) ("[S]tatutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified.") (citations omitted).

The Territorial Clause is not just a grant of power, but also a constitutional mandate to enact essential legislation for the U.S. territories. *Bidwell*, 182 U.S. at 196–97 (finding that congressional authority over territories "arises, not necessarily from the territorial clause of the Constitution, but from the necessities of the case, and from the inability of the states to act upon the subject.").

## II.    PROMESA

Puerto Rico has been in "dire financial straits" for several years. *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 112 (1st Cir. 2016) (citations omitted). Armed with plenary powers, Congress responded to Puerto Rico's crushing public debt by enacting PROMESA as a needful rule and regulation, pursuant to art. IV, § 3, cl. 2 of the U.S. Constitution, "to provide a method for Puerto Rico to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a).

The Act also created the Board, which is composed of seven voting members and one non-voting member—the Governor of Puerto Rico or his designee—serving *ex officio*. PROMESA §§ 101(e)(1), 101(e)(3). The Board operates as an entity within the government of Puerto Rico, *id.* §

101(c)(1), and is funded out of the Commonwealth's public fisc, *id.* § 107(b). The Board is tasked with several responsibilities and endowed with several powers. Among those responsibilities, the Board is in charge of the approval of fiscal plans, § 201(a); approval of budgets for Puerto Rico, § 202(a); reviewing territorial legislation to ensure that they are in compliance with the current fiscal plan, § 204(a)(1); and serving as the representative of the Commonwealth in Title III proceedings, § 315(b). Additionally, if the Board finds, in its sole discretion, that the government of Puerto Rico is not in compliance with PROMESA, it can develop its own fiscal plan, § 201(d)(2); and in case of a noncompliant budget, could make reductions or modifications to the proposed budget it as it sees fit, § 203(d).

With such power comes great responsibility and, accordingly, great oversight. That is why PROMESA requires the Board and its entire staff to comply with federal conflict of interest requirements, § 109(a), and financial disclosure requirements, § 109(b). In addition, the Board must prepare an annual report to the President, Congress, and the Governor and Legislature of Puerto Rico. PROMESA § 208(a). In this report, the Board must describe, among other requirements, Puerto Rico's progress in meeting the objectives of the Act, the assistance provided by the Board to the government of Puerto Rico, and the precise manner in which funds provided to the Board have been spent. *Id.*

Most salient to this case is Section 106(a) of PROMESA, which states in relevant part that "any action against the Oversight Board, and any action otherwise arising out of this Act in whole or in part, shall be brought in a United States district court for the covered territory . . . ." Puerto Rico is a "covered territory" under PROMESA. PROMESA §§ 5(8), 101(b)(1). Thus, interpreting the statute under its plain meaning, PROMESA authorizes this Court to hear any suit brought against the Board. *See Penobscot Nation v. Mills*, 861 F.3d 324, 330 (1st Cir. 2017) ("Where the meaning

of the statutory text is plain and works no absurd result, the plain meaning controls.") (citation omitted). Accordingly, given PROMESA's broad jurisdictional grant, the proper jurisdiction, and in fact, the only jurisdiction, for any claims against the Board is the U.S. District Court for the District of Puerto Rico. *See* PROMESA § 106(a); *see also* H.R COMM. ON NATURAL RESOURCES, PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT, H.R. Rep. No. 114-602, at 44 (2016) (explaining that "in the case of Puerto Rico, any non-Title III or non-subpoena related action must be brought in the U.S. District Court for the District of Puerto Rico.").

Section 106(a)'s jurisdictional grant does not go beyond Congress's powers over the territories. As explained above, Congress has plenary powers over the territories and, therefore, can treat the territories differently than States when enacting laws. *Harris*, 446 U.S. at 651–52, ("[T]o make all needful Rules and Regulations respecting the Territory . . . belonging to the United States, [Congress] may treat Puerto Rico differently from States so long as there is a rational basis for its actions.") (internal quotation marks and citation omitted). As a result, Congress's authority in enacting laws dealing with territories is not restrained the same way as it is when enacting laws at the national level. *Torres*, 442 U.S. at 470 ("Congress may make constitutional provisions applicable to territories in which they would not otherwise be controlling."). For example, when enacting laws at the national level, Congress can only legislate pursuant to the powers conferred to it by Article I of the U.S. Constitution. *See United States v. Lopez*, 514 U.S. 549, 552 (1995) (citing U.S. CONT. ART. I, § 8) ("The Constitution creates a Federal Government of enumerated powers."). In contrast, when legislating for the territories, Congress can go beyond its constitutional

limitations, absent a few exceptions, that would otherwise limit it if enacting laws for the states.[3]
*See Palmore*, 411 U.S. at 403 (explaining that "[i]n legislating for [territories], Congress exercises
the combined powers of the general, and of a state government."); *First Nat. Bank*, 101 U.S. at 133
(noting that "[c]ongress may not only abrogate laws of the territorial legislatures, but it may itself
legislate directly for the local government."); *Palmore*, 411 U.S. at 403 (explaining that Congress
may legislate for the territories "in a manner . . . that would exceed its powers or at least would be
very unusual, in the context of national legislation enacted under other powers delegated to it.").[4]

Thus, Congress is well within its powers to authorize any action against the Board to be
brought in federal court. Accordingly, taking into account the potentially devastating effect that
Puerto Rico's insolvency could bring to the U.S. municipal Bond market,[5] Congress created the
Board to help Puerto Rico get back on its financial feet, and gave this Court jurisdiction to hear
any cases against it.

## III.   Eleventh Amendment Immunity

The Board argues that the claims against it must be dismissed, since it was created as an
entity within the Commonwealth entitled to Eleventh Amendment immunity. The Court
disagrees.

---

[3] For example, Congress cannot make any laws that violate fundamental constitutional rights of U.S. citizens living in Puerto Rico. *See United States v. Lebron-Caceres*, 157 F. Supp. 3d 80, 89 (D.P.R. 2016), *amended*, No. CR 15-279 (PAD), 2016 WL 204447 (D.P.R. Jan. 15, 2016).

[4] Although the Supreme Court's opinion in *Palmore* involved the District of Columbia, Congress's power when legislating for the territories is almost identical to its powers when legislating for the District of Columbia under Article I, § 8 of the U.S. Constitution. *See District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 109 (1953)(explaining that under the D.C. home rule, the delegation of power of self-government to territories, remains subject to the power of Congress to revise, alter, or revoke the authority granted at any time).

[5] Nathan Bomey, *Puerto Rico declares bankruptcy. Here's how it's going to unfold*, USA TODAY, (Mar. 9, 2018, 5:15 PM), https://www.usatoday.com/story/money/2017/05/03/puerto-rico-bankruptcy/101243686/.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to mean "that each State is a sovereign entity in our federal system; and second, that [i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (internal quotation marks and citation omitted). The Court has long recognized that the Eleventh Amendment's "greater significance lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Pennhurst*, 465 U.S. at 98. As a result, the Eleventh Amendment not only protects a state's treasury, but also a state's "dignity interest as a sovereign in not being [hauled] into federal court." *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 63 (1st Cir. 2003).

The First Circuit Court of Appeals has consistently held that Puerto Rico is to be treated like a state for Eleventh Amendment purposes. *Grajales v. P.R. Auth.*, 831 F.3d 11, 15 n.3 (1st Cir. 2016); *Jusino Mercado v. Commonwealth of Puerto Rico*, 214 F.3d 34, 39 (1st Cir. 2000) (collecting cases). Thus, at first glance, it would seem that the Board is entitled to Eleventh Amendment immunity because it is an entity within the territorial government funded by the Commonwealth.[6] *See Metcalf & Eddy,*

---

[6] The parties did not address whether the Board should be considered an "arm" of Puerto Rico for Eleventh Amendment purposes. Docket Nos. 22, 25. The Court assumes without deciding that the Board is an "arm of Puerto Rico" because the Commonwealth funds it. *See Pastrana-Torres v. Corporacion De P.R. Para La Difusion Publica*, 460 F.3d 124, 126 (1st Cir. 2006) (noting that one of the factors to determine whether Eleventh Amendment immunity applies to a government entity "focuses on the risk that money damages will be paid from the state's treasury if the entity is found liable.") (citation omitted).

*Inc. v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935, 939 (1st Cir. 1993), *holding modified by Fresenius Med.*

*Care Cardiovascular Res., Inc.*, 322 F.3d at 56 ("Generally, if a state has a legal obligation to satisfy

judgments against an institution out of public coffers, the institution is protected from federal

adjudication by the Eleventh Amendment."). The Court finds, however, that Congress acted on

behalf of Puerto Rico to waive Eleventh Amendment protection as to the Board, and alternatively,

abrogated the Board's sovereign immunity.[7]

### A. Congress Waived Eleventh Amendment Immunity as to the Board

Generally, a state can consent to be sued in federal court and waive its Eleventh

Amendment immunity by passing a "state statute or constitutional provision." *Arecibo Cmty. Health*

*Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 24 (1st Cir. 2001); *see Atascadero State Hosp. v.*

*Scanlon*, 473 U.S. 234, 238 n.1 (1985). A waiver of sovereign immunity "must be stated by the most

express language or by such overwhelming implications from the text as [to] leave no room for

any other reasonable construction." *Arecibo Cmty. Health Care, Inc.*, 270 F.3d at 24 (quoting *Edelman*

*v. Jordan*, 415 U.S. 651, 673 (1974)) (internal quotation marks omitted).

In this case, Congress exercised its plenary powers to act on behalf of Puerto Rico and

waived the Board's Eleventh Amendment immunity. *See* PROMESA § 106(a). The Territorial

Clause gives Congress the power to enact statutes on behalf of the territories. *See Simms v. Simms*,

175 U.S. 162, 168 (1899) ("In the territories of the United States, Congress has the entire dominion

and sovereignty, national and local, Federal and state, and has full legislative power over all

_____

[7] In this Opinion and Order, the Court does not opine on the availability of Eleventh Amendment immunity
to Puerto Rico and its instrumentalities. The holding today is confined to the Board and its lack of access
to Eleventh Amendment protection.

subjects upon which the legislature of a state might legislate within the state; and may, at its

discretion, intrust that power to the legislative assembly of a territory.") (citations omitted). Here,

Congress, in its function as administrator of the territories enacted PROMESA, which created an

oversight board subject to suit in federal court. *See First Nat. Bank*, 101 U.S. at 133 (noting that

"Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate

directly for the local government."). This needful legislation is within Congress's power as it can

directly legislate for the territories, and in the rarest of cases, act as their legislature. *Id.* (noting

that Congress "may make a void act of the territorial legislature valid, and a valid act void . . . it

has full and complete legislative authority over the people of the Territories and all the

departments of the territorial governments.").[8]

It is evident from Section 106(a) that Congress meant to subject the Board to suits in

federal court. Section 106(a) states, in relevant part, that "any action against the Oversight Board

. . . shall be brought in a United States district court for the covered territory . . . ." Congress,

therefore, clearly indicated that any action against the Board must be litigated in this Court. The

congressional record supports this interpretation. Appendix B of the Congressional Research

Service's[9] ("CRS") report on PROMESA describes Section 106 as a "[w]aiver of sovereign

---

[8] The Court also notes other possible waiver arguments. First, the Court could find that the Board waived any immunity by making appearances in all the restructuring cases. *See Arecibo Cmty. Health Care, Inc.*, 270 F.3d at 25 (noting that "a state may waive its immunity through its affirmative conduct in litigation.") (citation omitted). Second, because PROMESA could be interpreted as a bankruptcy law and some adversarial proceedings in bankruptcy court can proceed against states despite sovereign immunity, then Eleventh Amendment immunity might not apply to the Board as this suit could be construed as an adversarial proceeding. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 379 (2006) (holding that Congress may treat states the same way it treats any other creditor with respect to "Laws on the subject of Bankruptcies" and haul them into federal court pursuant to the Bankruptcy Clause).
[9] The CRS is an arm of U.S. Congress that provides policy and legal analysis to committees and members of Congress on legislative matters. The CRS prepared a report to Congress on PROMESA that includes a section-by-section description of the bill. D. ANDREW AUSTIN, CONG. RESEARCH SERV., R44532, THE

immunity" section and further explains that this section limits "the extent to which a government unit can assert sovereign immunity." D. ANDREW AUSTIN, CONG. RESEARCH SERV., R44532, THE PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT (PROMESA; H.R. 5278, S. 2328) 36 (2016). Thus, the CRS's report is further evidence of Congress's intent to waive the Board's sovereign immunity.

When enacting PROMESA, Congress knew of Puerto Rico's dual system of federal and territorial courts. *See Examining Bd. of Eng'rs*, 426 U.S. at 587. Thus, Congress, knowing the Eleventh Amendment implications in creating an entity within the government of Puerto Rico,[10] decided under its plenary powers to give this Court exclusive jurisdiction over cases, like this one, brought against the Board. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

Accordingly, the Court finds that Congress waived the Board's Eleventh Amendment immunity.

Assuming *arguendo* that Congress did not waive the Board's Eleventh Amendment immunity on behalf of the Commonwealth, the Court finds that Congress abrogated the Board's immunity to suit through PROMESA.

### B.   Congress Abrogated Eleventh Amendment Immunity as to the Board

"Congress may abrogate [a state's] Eleventh Amendment immunity when it both unequivocally intends to do so and act[s] pursuant to a valid grant of constitutional authority."

---

PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT (PROMESA; H.R. 5278, S. 2328) (2016), https://fas.org/sgp/crs/row/R44532.pdf (last visited Apr. 26, 2018).

[10] Indeed, Congress declined to make the Board part of the Federal government. PROMESA § 101(c)(2) (stating that the Board "shall not be considered to be a department, agency, establishment, or instrumentality of the Federal government.").

*Laro v. New Hampshire*, 259 F.3d 1, 5 (1st Cir. 2001) (quoting *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks omitted)).

### 1.   Intent to Abrogate

Congress unequivocally intends to abrogate a state's Eleventh Amendment immunity if it makes "its intention unmistakably clear in the language of the statute." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (internal quotation marks and citation omitted). Here, it is "unmistakably clear" that Congress abrogated the Board's Eleventh Amendment immunity. *Seminole Tribe of Fla.*, 517 U.S. at 57. Section 106(a) of PROMESA states that "any action against the Oversight Board . . . shall be brought in a United States district court for the covered territory . . . ." The statute makes it abundantly clear that the Board is not immune from suit and grants the U.S. District Court for the District of Puerto Rico exclusive jurisdiction over any suit brought against the Board.

Moreover, the Supreme Court has held that a similar provision that conferred jurisdiction to a district court unequivocally showed Congress's intention to abrogate a state's sovereign immunity. *See Seminole Tribe of Fla.*, 517 U.S. at 57; *compare* 25 U.S.C. § 2710(d)(7)(A)(i)[11] *with* PROMESA § 106(a). Thus, the Court finds that Congress unambiguously intended to abrogate the Board's Eleventh Amendment immunity through Section 106(a) of PROMESA.[12]

---

[11] 25 U.S.C. § 2710(d)(7)(A)(i) provides that "The United States district courts shall have jurisdiction over any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in good faith . . . ."

[12] Holding otherwise would render Section 106(a) of PROMESA superfluous. *See Lowe v. S.E.C.*, 472 U.S. 181, 207 n.15 (1985) (Courts "must give effect to every word that Congress used in the statute.").

2.   **Power to Abrogate**

Concluding that Congress intended to abrogate the Board's Eleventh Amendment protection, the Court finds that Congress has the power to abrogate the Board's sovereign immunity pursuant to the Territorial Clause of Article IV of the U.S. Constitution.

The Court notes that abrogation via the Territorial Clause is an issue of first impression. Typically, and almost exclusively, the Supreme Court has held that Congress has the power to abrogate sovereign immunity pursuant to sections 1 and 5 of the Fourteenth Amendment. *Seminole Tribe of Fla.*, 517 U.S. at 59 (noting that "§ 1 of the Fourteenth Amendment contained prohibitions expressly directed at the States and that § 5 of the Amendment expressly provided that [t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article.") (internal quotation marks and citation omitted). However, Congress has plenary powers over the territory of Puerto Rico so, the Court must determine whether Congress also has the power, under the Territorial Clause, to abrogate the Board's sovereign immunity as an entity of Puerto Rico. In doing so, the Court walks between two constitutional planes, as the First Circuit Court of Appeals has considered Puerto Rico a state for Eleventh Amendment purposes, *Jusino Mercado*, 214 F.3d at (collecting cases), but is also a territory under Congress's control and administration. The Court holds that it does.

As stated above, it is well-settled that Congress has plenary powers over the territories. *See Palmore*, 411 U.S. at 403 ("In legislating for [the territories], Congress exercises the combined powers of the general, and of a state government.") (citation omitted); *see also Downes v. Bidwell*, 182 U.S. 244, 268 (1901) ("The power of Congress over the territories of the United States is general and plenary . . . .") (citations omitted). Congress has the power to legislate for Puerto Rico and even abrogate local legislation. *First Nat. Bank*, 101 U.S. at 133 ("[Congress] may make a void act of

the territorial legislature valid, and a valid act void."). Indeed, Congress is at the zenith of its power when legislating for the territories. This power comes for a constitutional mandate to oversee the territories and make any regulations to help administer them. Thus, Congress's plenary power must be, at the very least, equal to Congress's power to abrogate a state's sovereign immunity under sections 1 and 5 of the Fourteenth Amendment.

Accordingly, the Court finds that Congress can abrogate the Board's Eleventh Amendment immunity through the Territorial Clause.

### C. Territorial Federalism

The Board argues that, notwithstanding the issue of sovereign immunity, CPI's claim against the Board under Puerto Rico law "conflicts directly with the principles of federalism that underlie the Eleventh Amendment" pursuant to the holding in *Pennhurst*. The Court disagrees.[13]

In *Pennhurst*, the Supreme Court decided that sovereign immunity prohibits federal courts from instructing state officials on how to conform their conduct to state law, for it would intrude on state sovereignty and conflict "directly with the principles of federalism that underlie the Eleventh Amendment." 465 U.S. at 106. The Court further noted that the Eleventh Amendment "deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction." *Id.* at 119–20.

---

[13] The Board's interpretation of *Pennhurst* would leave CPI without any judicial forum to file this suit. *See* Docket No. 22 at 7. The Court declines to adopt such a harsh interpretation absent explicit authorization by Congress. *Cf. Johnson v. Robison*, 415 U.S. 361, 373-74 (1974) (a federal statute will not be construed to preclude judicial review of constitutional challenges absent clear and convincing evidence of congressional intent).

Unlike *Pennhurst*, this case does not involve federalism concerns because the Board is an entity within the Puerto Rico territorial government and not a state.[14] Eleventh Amendment immunity is derived from the power retained by the states when they entered the Union. *See Printz v. United States*, 521 U.S. 898, 919 (1997). This "residual sovereignty" comes from the notion that, while states surrender many of their powers to the federal government when they joined the Union, they retained "a residuary and inviolable sovereignty." *Id.* (quoting The Federalist No. 39, at 245 (J. Madison)). Puerto Rico has never entered the Union as a state or been considered a sovereign distinct from the United States. *Sanchez Valle*, 136 S. Ct. at 1873. Thus, since the Board was created as an entity within Puerto Rico, a territory of the United States, the idea of "dual sovereignties" under federalism is not violated. *Printz*, 521 U.S. at 932-33 (quoting *New York v. United States*, 505 U.S. 144, 187 (1992) (explaining that the U.S. Constitution established a system of "dual sovereignty" that divided power among state and federal government "so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day."); *see also Sanchez Valle*, 136 S. Ct. at 1876 ("Because the ultimate source of Puerto Rico's prosecutorial power is the Federal Government—because when we trace that authority all the way back, we arrive at the doorstep of the U.S. Capitol—the Commonwealth and the United States are not separate sovereigns.").

Accordingly, the Court finds that *Pennhurst* is inapplicable to the case at hand.

With the sovereign immunity issue laid to rest, the Court now turns to preemption.

---

[14] As stated above, the Court is not opining on the applicability of Eleventh Amendment immunity to Puerto Rico. Rather, today's holding is only applicable to cases brought against the Board pursuant to Puerto Rico law.

IV.    Preemption[15]

The Board argues that the public's right to inspect public documents pursuant to Puerto

Rico's Constitution is preempted by PROMESA. Docket No. 22 at 14-18. The Court finds the

Board's arguments unavailing.

Federal preemption is rooted in the Supremacy Clause, which states that federal law "shall

be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the

Contrary notwithstanding." U.S. Const. art. VI, cl. 2; *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 76

(2008). Pursuant to the Supremacy Clause, Congress has the power to preempt state law. *See Tobin

v. Fed. Exp. Corp.*, 775 F.3d 448, 452 (1st Cir. 2014). When determining if federal law preempts state

law, courts look to the intent of Congress. *Grant's Dairy—Me., LLC v. Comm'r of Me. Dep't of Agric., Food

& Rural Res.*, 232 F.3d 8, 14 (1st Cir. 2000) ("Congressional intent is the touchstone of preemption

analysis.").

Federal law can preempt a state law in one of two ways: express preemption or implied

preemption. *Grant's Dairy*, 232 F.3d at 15. "Express preemption occurs only when a federal statute

explicitly confirms Congress's intention to preempt state law and defines the extent of that

preclusion." *Id.* Implied preemption can occur through field preemption or conflict preemption.

Field preemption occurs when Congress creates "a federal regulatory scheme [] so pervasive as to

warrant an inference that Congress did not intend the states to supplement it." *Id.* Conflict

preemption has been found where "it is impossible for a private party to comply with both state

---

[15] "For preemption purposes, the laws of Puerto Rico are the functional equivalent of state laws." *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 323 (1st Cir. 2012). Additionally, the Court stresses the fact that Congress created the Board within the Commonwealth and, thus, as part of the government of Puerto Rico. PROMESA § 101(c)(1). It is through this lens that the Court undertakes the preemption analysis.

and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (internal quotation marks and citations omitted).

Courts "start with the assumption that the historic police powers of the States [are] not to be superseded by" a federal statute "unless that [is] the clear and manifest purpose of Congress." *Grant's Dairy*, 232 F.3d at 14–15 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)) (alterations in original). Courts have cautioned that "[p]reemption is strong medicine, not casually to be dispensed." *Id.* at 18 (citation omitted).

Because the Board raises arguments under all three preemption doctrines, the Court shall address each in turn.

### A. Express Preemption

The Board argues that Section 4 of PROMESA expressly preempts the right to inspect public documents pursuant to Puerto Rico's Constitution. Docket No. 22 at 15. Specifically, the Board claims that no additional disclosures are required because "Congress enumerated the limited circumstances where the Board is affirmatively required to disclose information to the public." *Id.* at 15-16. The Board further contends that since PROMESA includes an express preemption provision, the presumption against preemption is inoperative. *Id.* at 17. The Court disagrees.

Express preemption occurs when federal legislation contains language expressly addressing the subject of preemption. *See, e.g., Jones v. Rath Packing Co.*, 430 U.S. 519, 538 (1977). If the statute "contains an express pre-emption clause, [courts] do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the

best evidence of Congress'[s] pre-emptive intent.'" *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (internal quotation marks omitted) (quoting *Chamber of Commerce of U.S.A. v. Whiting*, 563 U.S. 582, 594 (2011)). The First Circuit has also noted that "although an express preemption clause may indicate congressional intent to preempt 'at least some state law,' courts nonetheless must 'identify the domain expressly pre-empted by that language.'" *Mass. Ass'n of Health Maint. Orgs. v. Ruthardt*, 194 F.3d 176, 179 (1st Cir. 1999) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)).

As a preliminary note, the Court finds that no provision in PROMESA clearly and manifestly makes all Puerto Rico law inapplicable to the Board. The only provision that comes close is Section 4 of PROMESA. We begin our analysis guided by the plain meaning of that clause.

Section 4 of PROMESA states: "The provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is *inconsistent* with this Act."[16] (emphasis added). Pursuant to its plain meaning, this clause preempts any Puerto Rico law that is inconsistent with PROMESA. However, because it is a seemingly broad preemption clause it is crucial to first examine the scope of this preemption provision. *Good*, 555 U.S. at 76 ("If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress'[s] displacement of state law still remains."); *see Riegel v. Medtronic, Inc.*, 552 U.S. 312, 334-35 (2008).

To determine if Puerto Rico laws are inconsistent with PROMESA context is required. For example, a Puerto Rico law would be inconsistent with PROMESA if it contravenes

---

[16] Black's Law Dictionary defines the term "inconsistent" as "[l]acking agreement among parts; not compatible with another fact or claim." INCONSISTENT, BLACK'S LAW DICTIONARY (10th ed. 2014).

PROMESA's stated purpose, which is "to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a). Complying with Puerto Rico's disclosure requirements would not impede or frustrate the purpose of PROMESA.

The Supreme Court has declined to find express preemption of state law in analogous federal statutory language. For example, in *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005), peanut farmers sent an intent to sue letter to a pesticide manufacturer, arguing that the use of a pesticide caused severe crop losses in violation of a state consumer protection law. *Id.* at 434-35. The manufacturer of the pesticide filed a declaratory judgment action in federal court claiming that any state tort claim based on the labeling and packaging of the pesticide was preempted under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). *Id.* at 435-36. The preemptive language in FIFRA provided that "[s]uch State shall not impose or continue in effect any requirements for labeling or packaging *in addition to or different from* those required under this subchapter." *Id.* at 443 (emphasis added). The pesticide manufacturers argued that state law claims were preempted because a verdict against the pesticide manufacturers based on the labeling of the pesticide might motivate changing a label and, thus, would qualify as a "requirement" that would be "in addition to" the ones articulated in FIFREA. *Id.* at 436-37. The Supreme Court found that "[a]n occurrence that merely motivates an optional decision does not qualify as a requirement" under FIFRA. *Id.* at 443. Thus, it held that the state law tort based on defective manufacturing and negligent testing was not preempted. *Id.* 445-46. As to the state law claims based on violations of labeling and packaging, the Court held that those claims were not necessarily preempted under FIFRA if they are "equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Id.*

Here, Section 4 does not preempt Puerto Rico disclosure law. Similar to the *Bates* case, where the federal statute expressly prohibited state law imposing labeling and packaging requirements that are "in addition to or different from" FIFRA, Section 4 of PROMESA supersedes Puerto Rico laws only if they are *inconsistent* with the Act. As PROMESA was enacted to restructure Puerto Rico's debt, and not to dictate the way Puerto Rico's government discloses information to the public, Puerto Rico law requiring disclosure of public information cannot be said to be inconsistent with PROMESA.

Congress could have added language specifically preempting Puerto Rico law on disclosure, but opted not to do so. However, Congress did use clear preemptive language in other sections of PROMESA. For example, PROMESA § 303(3) preempts the Commonwealth government from enacting restructuring laws or issuing "unlawful executive orders that alter, amend, or modify the rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory." Similarly, Section 504 preempts Puerto Rico laws or regulations concerning the approval process for critical infrastructure projects. *Id.* § 504(b), (e). Congress, however, did not include specific preemptive language referring to disclosure of information.

Accordingly, PROMESA does not expressly preempt the public's right to access and inspect public documents pursuant to Puerto Rico's Constitution.

## B. Implied Preemption

Absent an express preemption provision, or when a preemption provision lacks legislative precision, the question turns on whether preemption is implied. *Riegel*, 552 U.S. at 334-35. "More often, explicit pre-emption language does not appear, or does not directly answer the question. In

that event, courts must consider whether the Federal statutes 'structure and purpose,' or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent." *Barnett Bank of Marion Cty., N.A. v. N.A. v. Nelson*, 517 U.S. 25, 31 (1996) (citations omitted). Thus, when express preemption is not clear from the statute, "courts . . . face the task of determining the substance and scope of Congress'[s] displacement of state law." *Riegel*, 552 U.S. at 334-35 (citing *Bates*, 544 U.S. at 449).

The doctrine of implied preemption is further divided into two groups: field preemption and conflict preemption.

### 1.   Field Preemption

The Board asserts that any disclosure requirement under Puerto Rico law would be preempted under field preemption because (1) Congress has plenary powers over the needful rules and regulation of the territories, and (2) PROMESA "is part of a single integrated and all-embracing system . . . to govern debt restructuring for all United States territories—not merely Puerto Rico . . . thereby preempt[ing] the field of disclosure and non-disclosure for the Board." Docket No. 22 at 18 (citation omitted). The Court disagrees.

Under field preemption, "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English*, 496 U.S. at 79. Congress's intention is inferred when "a federal regulatory scheme is so pervasive as to warrant an inference that Congress did not intend the states to supplement it." *Grant's Dairy*, 232 F.3d at 15. "The question in each [implied preemption] case is what the purpose of Congress was." *Rice*, 331 U.S. at 230.

The Court finds that PROMESA does not preempt Puerto Rico disclosure law under field preemption for various reasons.

First, the right to access and inspect public documents in Puerto Rico is not an area where the federal government has played a large role. Field preemption is reserved for areas of the law and public administration where the federal government has traditionally held exclusive authority like, for example, immigration, foreign policy, or bankruptcy. *Accord Hines v. Davidowitz*, 312 U.S. 52, 74 (1941) (immigration); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 (2003) (foreign policy); *Franklin Cal. Tax-Free Tr.*, 136 S. Ct. at 1947 (bankruptcy).

In contrast, access to public information has been traditionally a local affair. *See Bhatia-Gautier v. Rosello-Nevares*, 2017 TSPR 173, 2017 WL 4975587 at *10 (P.R. 2017) ("Bhatia").[17] Thus, as an area that normally is reserved to the states, and in this case, the territory of Puerto Rico, the Court shall not assume that a federal statute has supplanted Puerto Rico law in this matter unless Congress makes such an intention "clear and manifest." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (quoting *Rice*, 331 U.S. at 230) (internal quotation marks omitted). The Board has not shown this to be the case here. Congress has not expressed a desire, neither in PROMESA nor in its legislative history, to have federal law be exclusive in the area of disclosures by the Board. As stated above, PROMESA's purpose is to help Puerto Rico achieve fiscal responsibility and access to capital markets. To achieve this, Congress created the Board, but did not choose to shield it from all local laws.[18]

---

[17] A certified translation of Bhatia can be found in PROMESA's Title III bankruptcy case, BK No. 17-03283(LTS) at Docket No. 2702-3.

[18] PROMESA does exempt the Board from certain local laws. *See, e.g.*, PROMESA §§ 103(c), 504(b). The fact that Congress specifically chose to render certain Puerto Rico laws inapplicable to the Board, but makes

Second, subjecting the Board to Puerto Rico's disclosure requirements would not interfere with comprehensive federal regulatory efforts. PROMESA includes the following disclosure provisions: (1) Section 104(e), requiring the disclosure of "[a]ll gifts, bequests or devises and the identities of the donors . . . within 30 days of receipt;" (2) Section 109(b), requiring the disclosure of any financial interests of the Board's members and its staff;[19] (3) Section 104(p), requiring the disclosure of the findings of any investigation made pursuant to Section 104(o); and (4) Section 101(h)(1), requiring the disclosure of the bylaws, rules, and procedures adopted by the Board. The Board is also required by Section 208 to submit an annual report to the President, Congress, and Puerto Rico's Governor and Legislature.[20] These provisions do not create a comprehensive statutory scheme that is so pervasive to leave no room for Puerto Rico law on public disclosure of information. PROMESA's disclosure framework pales in comparison with the comprehensiveness of frameworks such as the Federal Aviation Act ("FAA") or the Bankruptcy Code. *Cf. City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638 (1973) (noting that although noise control is deeply rooted in the police powers of a state, the pervasive control vested in the FAA leaves no room for local noise curfews or other local controls); *see Franklin Cal. Tax-Free Tr. v. Puerto Rico*, 805 F.3d 322, 341 (1st Cir. 2015), *aff'd*, 136 S. Ct. 1938 (2016) (precluding Puerto Rico "from strategically enacting

---

no mention of the disclosure laws at issue here, further supports the Court's analysis that the Board did not intend these laws to be preempted by PROMESA.

[19] The content of such disclosure is governed by Section 102 of the Ethics in Government Act of 1978. PROMESA § 109(b).

[20] This report must include: (1) the progress made by Puerto Rico's government towards the objectives of PROMESA; (2) the actions taken by the Board to assist in this process; (3) recommendations on legislative changes or federal actions needed to assist the Commonwealth in complying with the certified Fiscal Plan; (4) a precise description of the Board's expenses; and (5) "any other activities of the Oversight Board during the fiscal year." PROMESA § 208.

its own version" of municipal bankruptcy provisions under 11 U.S.C. § 903(1) of the bankruptcy code).

Third, the public's right to inspect public documents in Puerto Rico serves an important local interest. The Puerto Rico Supreme Court has found in a litany of cases that the public's right to access information possessed by the government is closely related to freedom of speech and freedom of the press and, accordingly, should be highly protected. *See Soto v. Srio. de Justicia*, 12 P.R. Offic. Trans. 597, 607-608 (P.R. 1982); *accord*[21] *Trans Ad de P.R. v. Junta de Subastas*, 174 D.P.R. 56, 67-68 (2008); *Colon Cabrera v. Caribbean Petroleum*, 170 D.P.R. 582, 590-91 (2007); *Ortiz v. Directora Administrativa de los Tribunales*, 152 D.P.R. 161, 175 (2000). The reasoning is very simple: "It is impossible to pass judgment on something without knowledge of the facts; neither may redress from government damages be claimed through judicial proceedings or at the polls every four (4) years." *Soto*, 12 P.R. Offic. Trans. at 608. Thus, in Puerto Rico, the public's right to information is not only found in local First Amendment jurisprudence, but is also stitched in the very fabric of Puerto Rico's democratic ideals.

Likewise, as the CPI correctly pointed out, "[w]hile PROMESA may be extremely comprehensive with respect to matters such as debt restructuring and access to markets . . . this is a far cry from preemption on public access to documents." Docket No. 25 at 17-18. If Congress had intended such result, it could have indicated so explicitly. *See Rice*, 331 U.S. at 230; *see also Lamie v. U.S. Tr.*, 540 U.S. 526, 537 (2004) (noting that courts should not add an "absent word" to a statute

---

[21] The cases cited here are in the Spanish language. The Court, however, did not rely on these untranslated cases when reaching its decision in this case.

because "[t]here is a basic difference between filling a gap left by Congress'[s] silence and rewriting rules that Congress has affirmatively and specifically enacted.").

Accordingly, the factors analyzed above weigh in favor of finding that PROMESA does not occupy the field of public disclosures by Puerto Rico government entities.[22]

### 2. Conflict Preemption

Finally, the Board briefly argues that Puerto Rico's public disclosure requirement conflicts with PROMESA's own disclosure procedures. Docket No. 22 at 18. According to the Board, "[w]here Congress exercises its plenary power over the territories, there is less reason to conclude that it intended its law to be supplemented by territorial law." Docket No. 22 at 18. The Court disagrees.

Under the conflict preemption doctrine, "state law is . . . pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fitzgerald v. Harris*, 549 F.3d 46, 53 (1st Cir. 2008) (quoting *Good v. Altria Group, Inc.*, 501 F.3d 29, 47 (1st Cir. 2007)). When conducting conflict preemption analysis, it "must be applied sensitively . . . so as to prevent the diminution of the role Congress reserved to the States while at the same time preserving the federal role." *Nw. Cent. Pipeline Corp. v. State Corp. Com'n of Kan.*, 489 U.S. 493, 515 (1989). The Supreme Court has established "that

---

[22] Additionally, PROMESA did not displace all Puerto Rico law. Although PROMESA changed the responsibilities and power delegated by Congress to the territorial government, Section 303 of PROMESA reserved some powers to the local government to continue managing the affairs of the Commonwealth.

a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Whiting*, 563 U.S. at 607 (internal quotation marks and citation omitted).

The Court finds no conflict between Puerto Rico's law on disclosure of public documents and PROMESA. It is possible for the Board to comply with both sets of law. The Board assumes PROMESA's disclosure provisions dictate the only way that the Board can publicly disclose information. However, Puerto Rico law can supplement the Board's disclosure requirements. While PROMESA requires certain documents and meetings to be publicly disclosed, it does not prevent additional disclosures by the Board.

The Board also contends that the public disclosure requirements under Puerto Rico's Constitution are contrary to PROMESA, because "PROMESA permits the Board to conduct its business in executive session protected from public view." Docket No. 22 at 18. The Court finds the Board's arguments unpersuasive. That PROMESA authorizes some of the Board's meetings to be held outside of public view, PROMESA § 101(h)(4), does not mean that the right to access public documents is inconsistent with PROMESA. When addressing access to public information in so-called "Executive Sessions," state courts with similar laws and disclosure issues have granted access to documents discussed in those sessions subject to the removal of confidential and privileged information. *See generally Atl. City Convention Ctr. Auth. v. S. Jersey Pub. Co.*, 135 N.J. 53, 57 (1994) (holding that "media representatives are entitled to access to such records of official public action, subject before disclosure to the removal of any confidential or privileged information that may be withheld under our principles of common-law access to public records or related principles of the Open Public Meetings Act"); *V.I. Daily News v. Gov't of Virgin Islands*, 2005 WL 3663481, at *3 (V.I. Super. Dec. 19, 2005) (rejecting the argument that the government did not have to produce any transcript of their "Executive Session" because it was closed to the public);

*State ex rel. Marshall Cty. Comm'n v. Carter*, 225 W. Va. 68, 75 (2010) (noting that the Open Governmental Proceedings Act, which gives the public a right to inspect public documents, "and its executive session exception are concerned with the public's access to government meetings, not what may or may not be obtained by means of civil discovery.").

In this case, when facing a request for public documents pursuant to Puerto Rico law, the Board could, for example, disclose documents deemed discoverable and deny access to others explaining the basis for the denial pursuant to applicable privilege and confidentiality laws. *See Soto*, 12 P.R. Offic. Trans. at 617 (listing the limitations on the right of access to public information). If unsatisfied with the Board's reasoning for denying the requested documents, the requesting party may seek judicial review. *See, e.g., De J. Cordero v. Prensa Insular de P.R., Inc.*, 169 F.2d 229, 232 (1st Cir. 1948) (explaining that, in that case, a writ of mandamus was filed in state court to compel the production of records). Nonetheless, potential disclosure of confidential or privileged material discussed in those sessions does not go towards finding a conflict with PROMESA, but towards denial of the requested material and, if necessary, a motion for a protective order under Fed. R. Civ. P. 26(c). Thus, the Court finds that it is possible for the Board to comply with PROMESA and Puerto Rico disclosure laws.[23]

Tracking the conflict preemption test, the Board also argues that Puerto Rico's Constitution disclosure requirement "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . as it conflicts with PROMESA's express provisions." Docket No. 22 at 18. The Court finds that requesting documents from the Board

---

[23] To comply with Puerto Rico's disclosure requirements, the Board, in its sole discretion could create or adopt rules and regulations under Puerto Rico law. *See, e.g.*, PROMESA § 101(h)(3).

pursuant to Puerto Rico's Constitution does not stand as an obstacle to the proper execution of PROMESA.

Pursuant to PROMESA, the Board was established to develop "a method [for Puerto Rico] to achieve fiscal responsibility and access to capital markets." PROMESA § 101(a). "Among other things, PROMESA (i) establishes a process for the [] Board to approve fiscal plans . . . and budgets of the [Commonwealth] and its instrumentalities . . . (ii) establishes a process for the [] Board to file a bankruptcy-type petition on behalf of the Commonwealth and its instrumentalities . . . and (iii) establishes an alternative mechanism for adjusting the Commonwealth's bond debt or the bond debt of its instrumentalities outside of a bankruptcy proceeding . . . ." *In re Fin. Oversight and Mgmt. Bd. for P.R.*, No. 17 BK 3283 (LTS), 2018 WL 1033299, at *2 (D.P.R. Jan. 30, 2018). Complying with requests for public documents pursuant to Puerto Rico law in no way impedes these objectives. Accordingly, the Court finds that there is no conflict between Puerto Rico law on disclosure of public documents and PROMESA.

Contrary to the Board's erroneous interpretation, PROMESA established a dual regulatory scheme in which the authority over certain financial matters is divided between Puerto Rico and the Board. *See* PROMESA § 303 (reserving powers to exercise political and governmental control of the territory to the government of Puerto Rico except in specific enumerated situations). Throughout PROMESA's provisions, moreover, there are several allusions to the Constitution of Puerto Rico and territorial laws. *See, e.g.,* PROMESA §§ 101(d)(1)(B), 101(d)(1)(C), 104(f)(1), 104(f)(2), 104(f)(3), 106(c), 201(b)(1)(M), 201(b)(1)(N), 204(c)(3)(A), 204(c)(3)(A)(ii), 314(b)(6), 410(3), 602. Thus, Congress did not enact PROMESA to the exclusion of Puerto Rico law, but divided the recovery efforts and management responsibilities between the Board and the territorial government. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK 3283 (LTS), 2017 WL

7160982, at *7 (D.P.R. Nov. 16, 2017) ("Congress might have chosen to make the [Board]'s job easier in the short term by granting it direct control and disabling the Commonwealth government's ability to dissent, but it did not do so. Congress deliberately divided responsibility and authority between the two.").

The fact that it may be somewhat costly or inconvenient to comply with the disclosure requirements does not make the Board's task to enforce PROMESA impossible.[24] The Board is an entity of the Commonwealth paid for by the Puerto Rican people and, as such, must comply with Puerto Rico law that is not inconsistent with its mandate. PROMESA § 4. Congress, pursuant to its plenary powers, could have drafted PROMESA in many ways. However, it chose to create the Board as an entity within the Commonwealth and, therefore, it must be treated accordingly.

Finally, a citizen's right to access public documents goes hand in hand with PROMESA's purpose. When enacting the Act, Congress expressed concern with Puerto Rico's lack of transparency and unaudited financial information.[25] PROMESA's provisions and its legislative history are evidence of this concern. *See* PROMESA §§ 204(b)(3), 405(m)(1); *see also* H.R Comm. on Natural Resources, Puerto Rico Oversight, Management, and Economic Stability Act, H.R. Rep. No. 114-602, at 40-46 (2016) (finding that PROMESA was a necessary legislation "[d]ue to the realities facing the island, and the inability of its local politicians to bring order and transparency.").[26] Thus, Puerto Rico disclosure law actually helps PROMESA's legislative

---

[24] In all actuality, costs should not be an issue as the government of Puerto Rico funds the Board and all its operational expenses. PROMESA § 107(b).

[25] *See* House Committee on Natural Resources, Bishop Statement on Senate Passage of PROMESA (June 29, 2016), https://naturalresources.house.gov/newsroom/documentsingle.aspx?DocumentID=400886 ("[PROMESA] is a framework for the Commonwealth to restore accountability in government, impose fiscal discipline and build a foundation for future prosperity.").

[26] A copy of the full report can be access at https://www.congress.gov/114/crpt/hrpt602/CRPT-114hrpt602-pt1.pdf.

purpose by shining light into the Board's dealings with the government of Puerto Rico. After all, "[s]unlight is said to be the best of disinfectants." L. Brandeis, Other People's Money 62 (1933).

If Congress wanted Puerto Rico's disclosure laws to be inapplicable to the Board, they could have explicitly said so, as it did with certain local laws. Congress could have protected the Board from any additional disclosures, as it has done in other statutes. *See, e.g.,* 50 U.S.C. § 3141 (2010) (allowing the exemption of Central Intelligence Agency operational files from FOIA); PROMESA § 103(c). However, Congress was silent as to the applicability of Puerto Rico disclosure requirements to the Board. Thus, the Court cannot read into PROMESA an exemption from the Puerto Rico's constitutional right to access public documents. *See Franklin Cal. Tax-Free Tr.,* 136 S. Ct. at 1947 ("Congress, does not, one might say, hide elephants in mouseholes.") (citation omitted).

Accordingly, the Court finds that Puerto Rico law regarding the public's right to access and inspect public documents is not preempted by PROMESA.

## V. A Citizen's Right to Access Public Documents pursuant to Puerto Rico's Constitution

Due to its close relationship with the First Amendment's freedom of speech and association, and the right to seek redress from the government, the Supreme Court of Puerto Rico has declared access to public information a fundamental right under Puerto Rico's Constitution. *See Soto,* 12 P.R. Offic. Trans. at 607-09; *see also Bhatia,* 2017 WL 4975587 at *10.

The Bill of Rights incorporated into Puerto Rico's Constitution "recognizes and grants some fundamental rights with a more global and protective vision than does the United States Constitution." *López Vives v. Policía de P.R.,* 19 P.R. Offic. Trans. 264, 273 (1987); *see also* P.R. Laws Ann. tit. 32, § 1781 (codifying "the right to inspect and take a copy of any public document of

Puerto Rico"). Years after its adoption, the Supreme Court of Puerto Rico recognized "the constitutional right to examine information held by the State. . . . [as] a necessary corollary to the freedom of speech consecrated in Art. II, Sec. 4 of the Commonwealth Constitution." *Id.* at 275. Puerto Rico's Supreme Court has reasoned that access to public information allows citizens to adequately evaluate and supervise the public duty of the government, and contributes to an effective participation of citizens in the governmental processes that affect their social environment. *See Bhatia*, 2017 WL 4975587 at *10.

In this case, the Board has in its possession a variety of public documents.[27] Pursuant to Puerto Rico law, CPI, as an organization that disseminates news, has a right to inspect these documents. *Id.* at *11 (noting that "if the people are not duly informed of the way in which the public duty is performed, their liberty to express, through vote or otherwise, their satisfaction or lack of satisfaction with the people, rules or procedures that govern them, will be impaired."). Thus, the Board must produce the documents requested.

Nevertheless, the right to public documents is not absolute and is subject to certain limitations. *See Bhatia*, 2017 WL 4975587 at *11. However, a denial of access to public documents has to be properly supported and justified, and cannot be denied arbitrarily and capriciously. *Id.*

---

[27] Puerto Rico's legal system defines the term "public document" as follows:

> [A]ny document which originates or is kept or received in any dependency of the Commonwealth of Puerto Rico according to the law or in relation to the management of public affairs and that pursuant to the provisions of § 1002 of this title is required to be permanently or temporarily preserved as evidence of transactions or for its legal value.

P.R. Laws Ann. tit. 3, § 1001(b) (2011).

(citing *Colon Cabrera v. Caribbean Petroleum*, 170 D.P.R. 582, 590 (2007)). In Puerto Rico, there is not a specific law that limits the public's access public documents. *Id.* at *11. Instead, Puerto Rico's Supreme Court has listed several instances when the Commonwealth can validly claim confidentiality over information that would otherwise have to be disclosed. *Id.* These are: 1) when a law so declares; 2) when the communication is protected by an evidentiary privilege that a citizen may invoke; 3) when the disclosure may injure the fundamental rights of third parties; 4) when it deals with the identity of a confidant; and 5) when it is "official information" pursuant to [28]Puerto Rico Rule of Evidence 514, P.R. Laws Ann., tit. 32, Ap. VI (2010). *Id.* Therefore, any attempt by the Board to protect documents from disclosure must be adequately supported by Puerto Rico law on this subject.

## CONCLUSION

In view of the foregoing, the Court **DENIES** the Board's Motion to Dismiss. This case will be referred to a Magistrate Judge to establish case management deadlines for the production of the requested documents. The Magistrate Judge will handle discovery disputes, provided the parties have complied with the meet and confer requirements of Local Rule 26(b) and have adequately justified any request for a protective order.

---

[28] This holding goes in line with the Federal government's respect for the First Amendment as evidenced in the Freedom of Information Act, 5 U.S.C. § 552, *et. seq.* Although Puerto Rico's First Amendment extends greater protection to speech, Congress's silence in PROMESA specifically preempting Puerto Rico's disclosure law can be reasonably interpreted as implicit recognition of the protection afforded by Puerto Rico's Supreme Court to the First Amendment. *See generally Elkins v. Moreno*, 435 U.S. 647, 666 (1978), *certified question answered sub nom. Toll v. Moreno*, 284 Md. 425 (1979) ("Congress'[s] silence is therefore pregnant").

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Friday, May 04, 2018.


                                                                    s/ Jay A. Garcia-Gregory
                                                                    JAY A. GARCIA-GREGORY
                                                                    United States District Judge