# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------X

CENTRO DE PERIODISMO INVESTIGATIVO,

     Plaintiff,

v.                                                                    Civil No. 17-1743 (JAG)

FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

     Defendant.

-------------------------------------------------------------X

## MOTION OF THE FINANCIAL OVERSIGHT AND
## MANAGEMENT BOARD FOR PUERTO RICO
## IN COMPLIANCE WITH COURT'S MARCH 1, 2019 ORDER

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 4

    A.   The Board's Production of Documents ...................................................... 4

    B.   The March 1, 2019 Status Conference .................................................... 7

LEGAL STANDARD ...................................................................................................... 8

BASES FOR RELIEF ..................................................................................................... 11

I.    THE BOARD PROPERLY WITHHELD DOCUMENTS SUBJECT TO VALID
    EXCEPTIONS TO DISCLOSURE. ..................................................................... 11

    A.   The Board Properly Withheld Documents Subject to the Deliberative
        Process Privilege. ................................................................................... 13

        1.   The Purpose and Scope of the Deliberative Process Privilege Is to Protect
            Government Decisionmaking. ......................................................... 13

        2.   The Board Appropriately Withheld Documents Pursuant to the Deliberative
            Process Privilege. ......................................................................... 16

    B.   The Board Is Entitled to Withhold Communications Between Itself and the
        Commonwealth Government Subject to the Common Interest Privilege. .................... 21

        1.   The Common Interest Privilege Protects Information Shared Between Counsel
            for the Commonwealth Government and the Board, as Parties With Identical
            Legal Interests. ............................................................................ 21

        2.   The Board Properly Withheld its Communications With the Commonwealth
        Government Covered by the Common Interest Privilege. .............................. 23

    C.   The Board Properly Withheld Documents Related to the Title III Mediation. ............ 25

    D.   The Board Properly Withheld Documents Pursuant to PROMESA Section 208......... 28

    E.   The Board Properly Withheld Documents Related to Law Enforcement
        Investigations. ....................................................................................... 29

    F.   The Board Properly Withheld Documents Pursuant to the Official Information
        Privilege, and/or Because Those Documents Would Impact the Puerto Rico
        Economy and/or the Board's Ability to Fulfill its Statutory Mandate........................ 32

        1.   Documents Subject to the Official Information Privilege Which Impact
            the Puerto Rico Economy ............................................................. 33

        2.   Documents Subject to the Official Information Privilege Which Impact the
            Board's Ability to Perform Its Duties. ........................................... 35

II.   GOOD CAUSE EXISTS TO ENTER THE PROTECTIVE ORDER UNDER
    PROMESA § 105. .............................................................................................. 37

CONCLUSION ............................................................................................................... 39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*ACQIS, LLC v. EMC Corp.*,
  No. 14-cv-13560, 2017 WL 2818984 (D. Mass. June 29, 2017)...........................................25

*Ades v. Zalman*,
  115 D.P.R. 514, 15 P.R. Offic. Trans. 675 (P.R. 1984)........................................................23

*Anderson v. Cryovac, Inc.*,
  805 F. 2d 1 (1st Cir. 1986)......................................................................................................9

*Asymmetrx Med., Inc., v. McKeon*,
  No. 11-11079-NMG, 2013 WL 2181084 (D. Mass. May. 16, 2013) .......................................9

*Bagwell v. U.S. Dep't of Educ.*,
  183 F. Supp. 3d 109 (D.D.C. 2016) .......................................................................................30

*Benson v. Rosenthal*,
  No. 15-cv-782, 2016 WL 3001129 (E.D. La. May 25, 2016) .................................................27

*Bhatia Gautier v. Rosselló Nevares*,
  199 D.P.R. 59 (P.R. 2017) ............................................................................................. passim

*Casasnovas v. UBS Fin. Servs.*,
  198 D.P.R. 1040 (P.R. 2017)..................................................................................................23

*Cavallaro v. United States*,
  284 F.3d 236 (1st Cir. 2002)..................................................................................................22

*CPI v. Berlingeri*,
  Civil No. KPE2010-1235 (904), 2011 WL 7268174 (P.R. Ct. of App. Nov. 18,
  2011) ............................................................................................................................. passim

*Crane Security Techs., Inc. v. Rolling Optics, AB*,
  230 F. Supp. 3d 10 (D. Mass. 2017) ................................................................................21, 22

*Dep't of Interior v. Klamath Water Users Protective Ass'n.*,
  532 U.S. 1 (2001)...................................................................................................................13

*Dipace v. Goord*,
  218 F.R.D. 399 (S.D.N.Y. 2003) ...........................................................................................15

*EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*,
  Civ. No. 11-1555(FAB/SCC), 2012 WL 12996198 (D.P.R. Oct. 24, 2012) ..........................22

*Espacios Abiertos, LLC v. E.L.A.*,
  KLAN201801348 (P.R. Ct. App. Mar. 6, 2019).........................................................28

*Espacios Abiertos, LLC v. Roselló Nevares*,
  Case No. SJ 2018 cv 09718 (P.R. Ct. of App. Mar. 6, 2019) ...................................10

*FDIC v. Ogden Corp.*,
  202 F.3d 454 (1st Cir. 2000) ...............................................................................21, 23

*Folb v. Motion Picture Industry Pension & Health Plans*,
  16 F. Supp. 2d 1164 (C.D. Cal. 1998), *aff'd*, 216 F.3d 1082 (9th Cir. 2000)......................1, 27

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
  739 F. Supp. 2d 515 (S.D.N.Y. 2010)......................................................................14

*Glenwood Farms, Inc. v. O'Connor*,
  666 F. Supp. 2d 154 (D. Me. 2009) .........................................................................27

*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999).....................................................................................15

*Hilsinger Co. v. Eyeego*,
  Civil Action No. 13-cv-10594-IT, 2015 WL 11120842 (D. Mass. Aug. 13,
  2015) ........................................................................................................................21

*In re Fin. Oversight and Mgmt. Bd. for P.R.*,
  295 F. Supp. 3d 66 (D.P.R. 2018)................................................................13, 15, 18

*In re Fin. Oversight and Mgmt. Bd. of P.R.*,
  297 F. Supp. 3d 269 (D.P.R. 2018), *appeal docketed*, No. 18-1214 (1st Cir.)......................39

*In re Teleglobe Comm'ns Corp.*,
  493 F.3d 345 (3d Cir. 2007).................................................................................21, 22

*Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*,
  297 F.R.D. 19 (D.P.R. 2014) .....................................................................................9

*Judicial Watch, Inc. v. U.S. Dep't of Health & Human Servs.*,
  27 F. Supp. 2d 240 (D.D.C. 1998) ..........................................................................14

*Kay v. FCC*,
  867 F. Supp. 11 (D.D.C. 1994) ...............................................................................29

*Lockett v. New Orleans City*,
  639 F. Supp. 2d 710 (E.D. La. 2009) ......................................................................11

*López Vives v. Policía de P.R.*,
  118 D.P.R. 219, 234-35 (P.R. 1987), 18 P.R. Offic. Trans. 264 ......................30, 31

*Marquez v. United States*,
258 F. Supp. 2d 7 (D.P.R. 2003), *aff'd sub nom. Marquez v. United States*, 91
F. App'x 162 (1st Cir. 2004) ........................................................................................22

*Nat'l Wildlife Fed. v. U. S. Forest Serv.*,
861 F.2d 1114 (9th Cir. 1988) ......................................................................................15

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 ..................................................................................................................14

*Ortiz v. Bauermeister*,
152 D.P.R. 161, 175 (P.R. 2000) ..................................................................................35

*Providence Journal Co. v. U.S. Dep't of Army*,
981 F.2d 552 (1st Cir. 1992) .........................................................................................14

*Rhode Island Dep't of Env'tl Mgmt. v. United States*,
304 F.3d 31 (1st Cir. 2002) ...........................................................................................11

*Rodriguez Lara v. ELA de Puerto Rico*,
Case No. HSCI201400371, 2016 WL 4772345 (P.R. Ct. of App. June 23,
2016) ..............................................................................................................................33

*Santiago v. Bobb y El Mundo, Inc.*,
117 D.P.R. 153, 17 P.R. Offic. Trans. 182 (P.R. 1986) ...............................33, 36, 37

*Shapiro v. U.S. Dep't of Justice*,
78 F. Supp. 3d 508 (D.D.C. 2015) ................................................................................30

*Shea v. McGovern*,
2011 WL 322652 (D. Mass. Jan. 31, 2011) ...........................................................33, 35

*Soto v. Srio. de Justicia*,
112 D.P.R. 477, 12 P.R. Offic. Trans. 597 (P.R. 1982) ..............................9, 35, 37

*U.S. Bartko v. Dep't of Justice*,
898 F.3d 51 (D.C. Cir. 2018) ........................................................................................31

## STATUTES

3 L.P.R.A. § 292(j) ...............................................................................................................29

3 L.P.R.A. § 761 ..................................................................................................................18

32 L.P.R.A. Ap. VI ..........................................................................................................32, 33

5 U.S.C. §§ 552(b)(4) ..........................................................................................................35

5 U.S.C. §§ 552(b)(8) ..........................................................................................................35

48 U.S.C. § 2125 ..................................................................................................37

48 U.S.C. § 2141 ..................................................................................................16

PROMESA § 101 ..................................................................................................34

PROMESA § 105 ....................................................................................................3

PROMESA § 106(e) ..............................................................................................38

PROMESA § 204 ..................................................................................................18

PROMESA § 208 .............................................................................................. passim

PROMESA 208(b) ............................................................................................7, 28

PROMESA § 315(b) ..............................................................................................23

Fed. R. Civ. P. 26(c) ......................................................................................8, 9, 12

Fed. R. Civ. P. 26(c)(1) ...........................................................................................8

P. R. R. Evid. 514 .......................................................................................9, 32, 35

P. R. R. Evid. 514(a) ...............................................................................................7

To the Honorable Magistrate Judge Bruce McGiverin:

As directed by the Court at the March 1, 2019 status conference held in this matter, the Financial Oversight and Management Board for Puerto Rico (the "Board") respectfully submits this motion (the "Motion") addressing the documents requested by plaintiff Centro de Periodismo Investigativo ("CPI") in its complaint dated June 1, 2017 [ECF No. 1] (the "Complaint") that the Board has withheld from CPI.[1]

## PRELIMINARY STATEMENT

CPI has lodged a litany of complaints about what the Board allegedly has failed to do with respect to CPI's requests for information. Among the documents CPI seeks to compel the Board to provide are documents (a) subject to strict confidentiality requirements of a mediation agreement with the judicial mediators U.S. District Judge Swain appointed, (b) barred from disclosure by PROMESA § 208, and (c) containing sensitive law enforcement information. CPI's complaints, in addition to lacking merit and seeking documents that are protected from disclosure, mask the substantial efforts the Board has voluntarily undertaken in this matter.

Notwithstanding the Board's objections to the Court's subject matter jurisdiction over this proceeding and the fact that it cannot be compelled to provide documents pursuant to Section 105 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Board elected not to immediately appeal the Court's ruling on the Board's motion to dismiss but, rather, to engage in a voluntary, good-faith effort to address CPI's document requests in a cooperative and efficient manner. And it has done so. All told, the Board has provided to CPI 18,419 documents totaling 67,704 pages in response to its requests. As of January 29, 2019, it had

---

[1] In complying with the Court's order, the Board reserves all of its rights, including its position that this Court is without jurisdiction over this matter.

addressed each and every one of CPI's broad requests, pointing CPI to public websites where the documents were already available to the public, certifying where documents requested do not exist in the Board's files, and producing the requested documents themselves.

Two of CPI's requests stand out in terms of breadth and scope.  In Requests (k) and (l), CPI demands **_literally any and all_** Board communications with the Commonwealth or federal governments.  These requests were not limited by subject matter or date, and are the type of broad requests Commonwealth courts have rejected – including in another case brought by CPI – as unreasonable.[2]  *See, e.g.*, *CPI v. Berlingeri*, Civil No. KPE2010-1235 (904), 2011 WL 7268174 (P.R. Ct. of App. Nov. 18, 2011).[3]  Even so, the Board undertook the time-consuming and costly task of reviewing thousands of documents in an effort to respond to the overbroad requests.  In the end, the Board provided CPI with tens of thousands of pages of such communications.  But the Board also legitimately withheld documents that fell within at least one of six categories: (1) documents subject to the deliberative process privilege; (2) documents subject to the common interest privilege; (3) communications with the federal judiciary as part of the ongoing mediation between the Board, the Commonwealth's creditors, and other parties; (4) documents the Board is prohibited from disclosing by PROMESA § 208; (5) documents containing confidential information regarding law enforcement investigations; and (6) documents subject to the Commonwealth's official information privilege, including documents that would potentially

---

[2]     The parties subsequently agreed to an April 30, 2018 cutoff date, although CPI has recently informed the Board that it wishes to cancel the parties' agreement.  The Board disputes that CPI can unilaterally do so.

[3]     A certified translation of *Berlingeri* is attached as Exhibit A to the Board's Motion Submitting Certified Translations, filed contemporaneously herewith.

impact the Puerto Rico economy or negatively impact the Board's ability to fulfill its duties under PROMESA if disclosed.[4]

Predictably, CPI has challenged the Board's withholding of these documents and demands their production. But these documents were properly withheld by the Board pursuant to legitimate articulated reasons. Compelling the Board to provide these documents would run counter to law and significantly hamper the Board's ability to engage in open and frank discussion, collaboration, and deliberation with the Commonwealth and U.S. governments.

As a preliminary matter, pursuant to PROMESA § 105, the Board cannot be compelled to provide *any* documents to CPI. That section states that the Board cannot be found liable for actions taken as part of its compliance with PROMESA; this manifestly covers the Board's maintenance and disclosure of documents. It is within the Board's discretion to determine whether, when and how its documents, including its communications with the Commonwealth and federal governments regarding Puerto Rico's return to financial solvency, are shared. As such, PROMESA bars CPI's efforts to have this Court order the Board to provide it with documents.

Furthermore, the Board's withholding of documents is justified. The right of access to public documents in the Puerto Rico Constitution is not limitless, and Commonwealth courts recognize that there must be a balance between the interests of the party seeking documents and the need to maintain such documents' confidentiality in order to effectively govern. Commonwealth courts have established several bases for preventing documents from disclosure, including when there is a statutory bar to their production, when they are subject to an evidentiary

---

[4]      In its communications to CPI, the Board listed the official information privilege, documents that would potentially impact the Puerto Rico economy, and documents that would negatively impact the Board's ability to fulfill its duties under PROMESA if disclosed as separate bases for withholding documents.

privilege, when disclosure would harm third parties, and when the documents comprise official information under Commonwealth law.  The categories of communications withheld by the Board fit within these exceptions and must remain confidential for the Board to achieve its goal of restoring the Commonwealth's fiscal solvency and to avoid other inequitable results.  CPI's continued demand for these communications in derogation of Commonwealth and federal law should not be permitted.

## **BACKGROUND**

### A.    **The Board's Production of Documents**

In its complaint filed on June 1, 2017 [ECF No. 1] (the "Complaint"), CPI seeks an order compelling the Board to produce 16 categories of documents.  On August 29, 2017, the Board moved to dismiss CPI's complaint on jurisdictional grounds and for failure to state a claim.  [ECF No. 22.]  On May 4, 2018, the Court denied the Board's motion.  [ECF No. 36.]

Although the Board disagreed with the Court's holdings in its order on the motion to dismiss and has reserved its rights regarding those and other grounds for dismissal,[5] the Board nevertheless undertook efforts to provide CPI with the documents sought in the Complaint in order to resolve this action in a practical way.  Between July and September 2018, the Board had completed its responses to all but two of CPI's requests, either by pointing CPI to public websites where the requested documents were already maintained or certifying the documents requested did not exist in the Board's files.

During this same period, the Board undertook an expansive review of its communications with the Commonwealth and U.S. governments in order to respond to the two remaining requests:

---

[5]    *See, e.g.*, *Opposition of the Financial Oversight and Management Board to Plaintiff's Amended Motion for Finding of Contempt and Imposition of Civil Fines*, at 1 n.2.  [ECF No. 72.]

CPI's Requests (k) (communications with the federal government) and (l) (communications with the Commonwealth Government).  To be clear, these requests are not focused inquiries seeking information about specific issues or events.  Rather, these requests seek *every* communication, *regardless of topic*, *without date or other restriction,* between the Board and/or its staff and anyone in either the Commonwealth or U.S. governments.  Even so, the Board undertook to collect, review and provide documents responsive to these requests.  It collected and reviewed all email communications between the Board and Commonwealth and U.S. government email addresses from the establishment of the Board through April 30, 2018 – the mutually-agreed upon cutoff date for CPI's requests.  [ECF No. 55 at 2 ("The parties have agreed that the cut-off date for the public documents to be covered by this case is April 30, 2018.").][6]

Following its review of federal government communications, on October 12, 2018, the Board provided CPI with 5,615 documents, totaling approximately 18,989 pages, responsive to Request (k).  Due to the breadth of this request and the confidential and/or privileged nature of many of the responsive documents, the Board withheld certain documents.  Accordingly, on November 21, 2018, the Board sent a letter to CPI informing it of five categories of documents that it had withheld from its provision of communications between the Board and the federal government:  (1) documents protected under the deliberative process privilege, (2) documents that were part of the Title III mediation, (3) documents relating to law-enforcement investigations, (4) documents that could impact the Puerto Rico economy if disclosed, and (5) documents that would be harmful to the public interest by impeding the Board's ability to perform its statutory duties.

---

[6]      On March 1, 2019, CPI informed the Board that it was "withdrawing" its agreement to the date restriction on its requests, claiming delays in production justify its change in position.  *See* March 1, 2019 Letter from J. Berkan to G. Brenner [ECF No. 85-1] (the "March 1 Letter"), at 6.  The Board disagrees that CPI can unilaterally withdraw from its agreement, which was made without any conditions.  The Board will not provide documents post-dating April 30, 2018.

*See* November 21, 2018 Letter from G. Brenner to J. Berkan (the "November 21 Letter").  [ECF No. 65-3.]

CPI did not respond to the November 21 Letter by seeking to clarify the categories of withheld documents or to confer with the Board.  Instead, it demanded that the Board expend additional time and expense to create a document-by-document privilege log that was not required under the Federal Rules of Civil Procedure and would provide CPI with little, if any, additional relevant information to challenge the Board's withholding determinations.  CPI also sought Court intervention through a request for a status conference before Judge García Gregory, despite not fulfilling its meet-and-confer obligations under the Local Rules prior to making that request.

On January 29, 2019, the Board provided 12,754 additional documents, totaling approximately 43,350 pages, responsive to Request (l) (communications with the Commonwealth government).  Before the Board did so, on January 15, 2019, CPI went so far as to file a motion for sanctions and contempt against the Board for failure to provide documents in response to the requests made in the Complaint – despite being informed that the Board intended to provide the documents by the end of that month.  [ECF No. 69.]

On January 31, 2019, CPI and the Board submitted a joint informative motion to the Court that listed, among other things, the remaining disputes between the parties.  The Court then scheduled a status conference for March 1, 2019, at which the parties were "to address all pending discovery-related disputes, concerns and questions."  [ECF No. 70.]

On February 8, 2019, the Board sent a letter to CPI listing six categories of documents that it had withheld from its January 29, 2019 provision of communications between the Board and the Commonwealth government in response to Request (l).  *See* Feb. 8, 2019 Letter from G. Brenner to J. Berkan (the "February 8 Letter").  [ECF No. 83-1.]  The Board informed CPI that it had

withheld documents from the January 29, 2019 production on the following grounds:  (1) the deliberative process privilege, (2) the common interest privilege, (3) PROMESA § 208(b)'s prohibition of the disclosure of documents related to the Commonwealth's tax abatement reports, (4) documents covered by the official information privilege pursuant to Puerto Rico Rule of Evidence 514(a), (5) documents that could potentially impact the Puerto Rico economy if disclosed, and (6) documents that would be harmful to the public interest by impeding the Board's ability to perform its statutory duties.  CPI did not respond to the February 8 Letter or otherwise attempt to discuss its contents prior to the March 1 status conference.

### B.      The March 1, 2019 Status Conference

On March 1, 2019, the Court held a status conference in this matter.  During the conference, among other things, CPI raised its objections to the Board's withholding of certain categories of documents responsive to Requests (k) and (l).  In response, counsel for the Board explained that it was willing to engage with CPI on questions of privilege and other bases for withholding documents from production.  Tr. of March 1, 2019 Status Conference, 15:4-8.  Counsel for the Board also stated the Board's position that if CPI believed documents were improperly withheld, it should file a motion to compel production.  *Id.* at 15:9-19.

The Court adopted the following process to address CPI's complaints:  It ordered CPI to inform the Board by letter of a complete list of its objections to the Board's withholding of documents, and, if the parties were unable to resolve these disputes themselves, for the Board to file a motion for a protective order.  *Id*. at 31:5-32:1.

Later that day, CPI sent a letter informing the Board that it objected to *all* of the bases on which documents were withheld – either outright or because of alleged deficiencies in the explanations provided.  In the same letter, it belatedly provided some specific objections to the Board's November 21 and February 8 Letters.  *See* March 1 Letter.  For the first time, *nearly five*

*months* after the Board provided its communications with the federal government and *a month and a half* after the Board provided its communications with the Commonwealth government, CPI informed the Board of its substantive objections to the Board's withholding of documents and asked for clarification regarding some of the bases for withholding articulated in the Board's letters.[7]

The Board files this Motion in compliance with the Court's Order, addressing the bases for the documents withheld under Requests (k) and (l).[8]

## LEGAL STANDARD

In its opinion denying the Board's motion to dismiss, the Court noted that any motions for a protective order filed in this proceeding would be governed by Federal Rule of Civil Procedure 26(c). *Opinion and Order*, May 4, 2018, at 29. [ECF No. 36.] That rule allows a court to enter a protective order for "good cause." Fed. R. Civ. Proc. 26(c)(1). A finding of good cause must be based on specific and particular factual allegations that demonstrate the potential harm of

---

[7]     The Board addresses the issues belatedly raised by CPI, to the extent relevant, in this brief.

[8]     Notably, CPI stated in the March 1 Letter that it had "additional issues regarding the earlier productions and similar concerns with respect to the federal production and the Puerto Rico production." March 1 Letter at 5. This revelation was surprising given that CPI had been in possession of the documents for months and had failed to disclose these purported concerns to the Court, even though the Court expressly requested the parties address all remaining disputes at the status conference in order to avoid piecemeal litigation and streamline resolution of the issues. [ECF No. 70.] Indeed, the parties' January 31, 2019 joint informative motion provided the Court with "[a] summary of the remaining disputes between the parties." [ECF No. 73.] On March 15, 2019, CPI provided its belated list of concerns, which it refined by letter dated March 20, 2019. That list was directed entirely to requests the Board addressed nine months or more ago, in July and August 2018. Moreover, in its correspondence, CPI claims that it is still has not conducted a "complete" review of the documents provided in October and January. CPI's failure to comply with the Court's prior orders seeking to avoid piecemeal motions practice and belated raising of issues that should have been addressed months ago raises serious concerns. Indeed, despite consistently demanding prompt action by the Board and this Court because of the supposed urgent need for the information sought in its complaint, CPI is only now raising concerns about documents it claims were never produced and admits it has still not completed its review of documents provided five months ago. CPI's failure to either review the documents it received or to raise its mistaken belief about alleged missing documents for months belies the sincerity of CPI's complaints about the pace of production.

producing the documents in question. *Anderson v. Cryovac, Inc.*, 805 F. 2d 1, 7 (1st Cir. 1986). In considering whether to enter a protective order, a court "must balance the burden of proposed discovery against the likely benefit." *Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*, 297 F.R.D. 19, 21 (D.P.R. 2014) (citing *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 400 (1st Cir. 2005)). Relevant factors "to be balanced are considerations of the public interest, the need for confidentiality, and privacy interests." *Id.* (internal quotations omitted). The existence of a valid privilege, such as the deliberative process privilege, constitutes good cause under this analysis. *Asymmetrx Med., Inc., v. McKeon*, No. 11-11079-NMG, 2013 WL 2181084, at *2 (D. Mass. May. 16, 2013) ("[P]rivilege constitutes such good cause.").

The test for determining good cause to enter a protective order under Rule 26(c) is similar to the balancing of interests required by Commonwealth law for withholding documents from production to the public. Although the Puerto Rico Constitution recognizes a right of access to public information, there are situations in which the right of access to information "yields to circumstances of imperative public interest that justify a claim of confidentiality by the State." *Berlingeri*, 2011 WL 7268174, at *4; *see also Soto v. Srio. de Justicia*, 112 D.P.R. 477, 12 P.R. Offic. Trans. 597, 617 (P.R. 1982) ("[T]he right of access and to gather information cannot be absolute."). These exceptions to the production of documents, as recognized by the Puerto Rico Supreme Court, include when: "(1) a law so declares; (2) the communication is protected by one of the evidentiary privileges that the citizens may invoke; (3) revealing the information may injure the fundamental rights of third parties; (4) it deals with the identity of a confidante; or (5) it is official information pursuant to Rule 514 of Evidence." *Bhatia Gautier v. Rosselló Nevares*, 199

D.P.R. 59 (P.R. 2017) (Certified Translation at 19).[9]  The Court here has recognized these limits, noting that "when facing a request for public documents pursuant to Puerto Rico law, the Board could, for example, disclose documents deemed discoverable and deny access to others explaining the basis for the denial pursuant to applicable privilege and confidentiality laws."  *Opinion and Order*, May 4, 2018 [ECF No. 36, at 29.]

Moreover, while persons and entities like CPI have a right to access public documents, that right must be used "proportionately."  *Espacios Abiertos, LLC v. Roselló Nevares*, Case No. SJ 2018 cv 09718, at 20 (P.R. Ct. of App. Mar. 6, 2019).[10]  Use of the right to access information "unrestrictedly, unlimitedly, and absolutely can impair government functions and harm its credibility in economic relations."  *Id.*

Thus, under both federal and Commonwealth law, whether the Board may withhold documents depends on balancing public and private interests, along with the need for confidentiality of government materials.  The existence of a privilege will qualify a document to be excluded from production, but a court may find that documents should be withheld under other criteria as well.  *See Bhatia*, 199 D.P.R. 59 (Certified Translation at 19) (listing other grounds beyond privilege for withholding documents from production).

---

[9]    A certified translation of *Bhatia* is attached as Exhibit B to the Board's Motion Submitting Certified Translations.

[10]   A certified translation of *Espacios Abiertos* is attached as Exhibit C to the Board's Motion Submitting Certified Translations.

**BASES FOR RELIEF**

**I.    THE BOARD PROPERLY WITHHELD DOCUMENTS SUBJECT TO VALID EXCEPTIONS TO DISCLOSURE.**

The Board objects to the validity of this action and does not waive any of the arguments made in its motion to dismiss.[11]  *See Def.'s Mot. to Dismiss Pl.'s Compl.*   [ECF No. 22.] Notwithstanding those arguments, the Board has already provided thousands of documents in response to CPI's broad requests in order to resolve this dispute.  The documents the Board has voluntarily provided have not been irrelevant or immaterial; indeed, using details obtained from those documents, CPI has published multiple articles discussing in-depth the Board's communications with federal government officials on issues including the potential privatization of PREPA, the Board's security procedures, and the involvement of McKinsey in the creation of the fiscal plans.   *See, e.g.,*   http://periodismoinvestigativo.com/2018/12/republican-senators-quietly-pushed-privatization-of-puerto-ricos-power-utility/;

http://periodismoinvestigativo.com/2018/12/mckinsey-puerto-rico-bondholder-and-fiscal-boards-lead-adviser/.

However, during its review of documents responsive to CPI's exceedingly broad requests, the Board, unsurprisingly, came across documents containing information it was entitled to withhold.  In the November 21 and February 8 Letters, the Board provided its grounds for

---

[11]      As further discussed *infra*, notwithstanding the Court's determination that it has jurisdiction over this matter (the Board has reserved all rights on that issue), PROMESA § 105 protects the Board from liability for any obligation or claim.  By using the terms "obligation" and "claim," Congress made clear the Board was protected from both obligations to do things and claims for money.  The filing of this motion does not constitute a waiver of any of the Board's arguments concerning jurisdiction, sovereign immunity, and the application of PROMESA § 105.  *See, e.g.*, *Lockett v. New Orleans City*, 639 F. Supp. 2d 710, 724 (E.D. La. 2009) (filing motion for protective order is "limited participation" in lawsuit and does not constitute affirmative litigation conduct sufficient to waive sovereign immunity defense); *see also Rhode Island Dep't of Env'tl Mgmt. v. United States*, 304 F.3d 31, 49 (1st Cir. 2002) (conducting discovery does not constitute waiver of sovereign immunity defense).

withholding such documents, as well as information regarding the communications so withheld (without revealing their confidential contents).  The Board's categories of withheld documents are: (1) documents subject to the deliberative process privilege; (2) communications between the Board and the Commonwealth Government that are covered by the common interest privilege between those entities; (3) documents that are confidential pursuant to the Title III mediation; (4) documents shielded from disclosure by PROMESA § 208; (5) documents containing confidential information regarding law enforcement investigations; and (6) documents subject to the Commonwealth's official information privilege, including documents that would potentially impact the Puerto Rico economy or negatively impact the Board's ability to fulfill its duties under PROMESA if disclosed.  Each of these categories fits into at least one of the grounds recognized by Commonwealth courts as valid exceptions to the general rule of disclosure of public documents. *See Bhatia*, 199 D.P.R. 59 (P.R. 2017) (Certified Translation at 19).

CPI, on the other hand, has not provided specific explanations regarding its entitlement to and need for the withheld documents.  Instead, it has simply repeated that it needs these documents in order to fulfill "the news gathering function of the CPI and its ongoing investigative journalism." *Pl.'s Am. Mot. for a Finding of Contempt & the Imposition of Civil Fines Against the Board*, ¶ 17. [ECF No. 69.]  Under CPI's theory, it is entitled to every document because it can write a "news" story about it.  A generalized interest in obtaining documents solely for the sake of obtaining them cannot overcome the Board's particularized entitlement and need to maintain the confidentiality of the withheld documents, particularly when CPI's requests are not tailored to a specific topic or need. *Berlingeri*, 2011 WL 7268174, at *1; Fed. R. Civ. P. 26(c).

For example, in *Berlingeri*, another case brought by CPI seeking public documents, the Court rejected CPI's overly broad request for documents—which sought the agenda,

appointments, and visitors' logs of the Governor and the Chief of Staff for the entire time they were in office—in part because CPI had asserted only a "vague and imprecise" articulation of how the documents requested "help them in achieving the objective pursued." *Id.* at *7. In rejecting the request, the court observed that "excessive access to all information available for the mere fact of obtaining information does not contribute anything to the interest invoked of citizen oversight of public administration." *Id.* This Court is faced with the same circumstance, as here the sole basis for CPI's requests is its mere desire for access to information. Like the *Berlingeri* court concluded, that generalized interest must yield where there is a plausible rationale to maintain documents as confidential.

This Motion explains the rationale provided in the Board's letters for each of the exceptions to disclosure listed above. Accordingly, the Board has demonstrated good cause sufficient for the Court to bar CPI from further demanding that the Board provide documents it has withheld.

**A.     The Board Properly Withheld Documents Subject to the Deliberative Process Privilege.**

**1.     The Purpose and Scope of the Deliberative Process Privilege Is to Protect Government Decisionmaking.**

The deliberative process privilege "protects the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process." *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 70 (D.P.R. 2018) (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884-85 (1st Cir. 1995)). This privilege is vital to the operation of government; even CPI admits this privilege is "fundamental." March 1 Letter at 4 (quoting *Bhatia*, 199 D.P.R. at 84). The purpose of the deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the 'quality of agency decisions' by protecting open and frank discussion among those who make them within the government." *Dep't*

*of Interior v. Klamath Water Users Protective Ass'n.*, 532 U.S. 1, 8-9 (2001) (citations omitted); *see also Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 541 (S.D.N.Y. 2010) (deliberative process privilege "promote[s] better policymaking by encouraging candor in internal deliberations"); *Judicial Watch, Inc. v. U.S. Dep't of Health & Human Servs.*, 27 F. Supp. 2d 240, 245 (D.D.C. 1998) (deliberative process privilege protects "candid consideration of alternatives, and thus improv[es] the quality of agency decisionmaking").  It also facilitates the exchange of uninhibited opinions and recommendations without misleading the public through dissemination of documents suggesting reasons and rationales for a course of action that were not, in fact, the ultimate reasons for the agency's action.  *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992).

To be "deliberative," documents "must actually be related to the process by which policies are formulated."  *Fox News Network*, 739 F. Supp. 2d at 541 (internal quotations omitted).  In determining whether a document meets this criterion, courts evaluate factors such as whether the document "forms an essential link in a specific consultative process, whether it reflects the personal opinion of the writer rather than the policy of the agency, and whether, if released, it would inaccurately reflect or prematurely disclose the views of the agency."  *Id*.  Documents must also be "pre-decisional," or "prepared in order to assist an agency decisionmaker in arriving at his decision."  *Id.*; *Providence Journal Co.*, 981 F.2d at 557-59 (documents qualify for protection if they are "predecisional," meaning they (1) relate to a specific agency decision; (2) were prepared for the purpose of assisting an agency official charged with making a decision, and (3) precede the decision to which they relate; and deliberative, meaning they "reflect the give-and-take of the consultative process").  However, the agency "need not pinpoint an exact decision made in reliance on the document."  *Id.*; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 n.19 ("[T]he

line between pre-decisional documents and post-decisional documents may not always be a bright one."). Although the deliberative process privilege does not apply to documents that are purely factual, "factual matters may be covered . . . inasmuch as they are interwoven with decisional procedures or protected deliberative materials." *Bhatia*, 199 D.P.R. 59 (Certified Translation at 24 n.22); *see also Nat'l Wildlife Fed. v. U. S. Forest Serv.*, 861 F.2d 1114, 1120 (9th Cir. 1988) ("In some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege."). To invoke the privilege, the governmental party must formally claim the privilege, provide the reasons justifying confidentiality, and identify and describe the information or documents that are being withheld. *Bhatia*, 199 D.P.R. 59.

Applying this framework, a range of documents reflecting an agency's discussions in arriving at a final decision are privileged, including many of those sought by CPI. For example, "communications leading up to" drafts of government policies "fall squarely within the deliberative process privilege." *In re Financial Oversight and Management Board for Puerto Rico*, 295 F. Supp. 3d at 70. Other types of covered documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) (internal quotation marks and citations omitted). Such communications may be within the agency, between an agency and its consultants and advisors, or between separate government agencies. *Dipace v. Goord*, 218 F.R.D. 399, 403 (S.D.N.Y. 2003) ("The privilege applies to both intra-agency and inter-agency communications.").

Puerto Rico recognizes the deliberative process privilege. The Puerto Rico Supreme Court held a "substantial public interest exists in maintaining and ensuring full, frank, open exchanges

of ideas between members of the agency and other advisors and the decision maker." *Bhatia*, 199

D.P.R. 59 (Certified Translation at 23); *see also Berlingeri*, 2011 WL 7268174, at *5 (deliberative

process privilege limits access to "documents or communications which . . . include opinions or

recommendations regarding the decisional process on public policy" to "promote frank and ample

discussion among those officials who participate in the internal government decision process").

**2.      The Board Appropriately Withheld Documents Pursuant to the Deliberative Process Privilege.**

The Board withheld approximately 16,395 documents[12] on deliberative process privilege

grounds.  The large number of withheld documents in this category is not remarkable, given that

the Board's central role, pursuant to its congressional mandate, is to certify fiscal plans and budgets

for the Commonwealth and its various instrumentalities and oversee the implementation of those

plans and budgets, and the fact CPI sought literally every communication between the Board and

the Commonwealth government.  *See* 48 U.S.C. § 2141.  To fulfill this purpose, the Board must

necessarily review and analyze Commonwealth economic data and metrics, communicate with

other governmental agencies (both inside and outside of the Commonwealth), and otherwise

engage in deliberative communications with both the Commonwealth and the federal governments

regarding the creation and review of fiscal plans, budgets, contracts and reapportionment requests.

*See* 48 U.S.C. §§ 2141 (describing necessary collaboration and communication between Board

and Governor to propose, review, certify and revise fiscal plans), 2142 (same for Commonwealth

budgets).

---

[12]      The number of documents withheld, both pursuant to the deliberative process privilege and in the other categories of exceptions, is not equivalent to the total number of communications withheld.  Rather, the number of documents withheld is somewhat inflated because multiple strings of emails comprising one email chain were counted as separate documents.  Moreover, many documents are covered by multiple privileges.

As the Title III court has recognized, "[a]ction by consensus [between the Board and the Commonwealth government] is likely the surest and most efficient way to clarify and forge Puerto Rico's way forward." *See Rivera-Schatz v. Fin. Oversight and Mgmt. Bd. for P.R.*, Adv. Proc. No. 18-ap-00081-LTS (Aug. 7, 2018), at 14. [ECF No. 46.] As envisioned by PROMESA, "collaboration" between the Board and the Commonwealth government "on fiscal plan and budgetary matters" is "the norm." *Id.* at 15. Thus, by design, PROMESA requires the Commonwealth and the Board to engage in an "interactive process of soliciting proposals and revisions from the Government . . . ." *Rosselló Nevares v. Fin. Oversight and Mgmt. Bd. for P.R.*, Adv. Proc. No. 18-00080-LTS (Aug. 27, 2018), at 33. [ECF No. 40.] That process necessarily requires regular communications between the Commonwealth and the Board as the parties attempt to reach consensus on fiscal plans and budgets that restore the Commonwealth to fiscal health. Indeed, the Board must engage with the Commonwealth government in its development of fiscal plans and budgets, as the Title III Court has further held that "[w]hile the [Board] can certify its own fiscal plan and budget under certain circumstances, it may only do so after an interactive process with the territorial government does not yield a plan or budget that is acceptable to the [Board]." *Opinion and Order Denying Urgent Motion of FOMB to Confirm Appointment of a Chief Transformation Officer*, Case No. 17-BK-4780-LTS (Oct. 26, 2017), at 10. [ECF No. 361.] As such, it should come as no surprise that a large number of documents implicated by CPI's extremely broad Requests (k) and (l) are protected by the deliberative process privilege.

As noted above, invocation of the deliberative process privilege in Puerto Rico requires the governmental party to formally claim the privilege, provide the reasons justifying confidentiality, and identify and describe the information or documents that are being withheld. *Bhatia*, 199 D.P.R. 59 (Certified Translation at 23). The Board has met these criteria. In the November 21

and February 8 Letters, the Board not only informed CPI that it had withheld documents on the basis of the deliberative process privilege, it also identified eleven substantive topics that the Board and the Commonwealth government, including AAFAF, Hacienda, and the Puerto Rico Office of Management and Budget ("OMB"), or the U.S. government (and/or their advisors) discussed in those documents.  Such topics include the planning and development of seven different fiscal plans for the Commonwealth and its instrumentalities.  As noted above, the Title III Court has held that drafts of the fiscal plans and the Board's communications relating to the drafting of these plans with other governmental agencies are within the deliberative process privilege's ambit.  *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 295 F. Supp. 3d at 70 ("Those communications or documents which led to the creation of the [Commonwealth fiscal plans] are subject to the deliberative process privilege and may be withheld from production.").  The remaining four topics involved other policy determinations in which the Board is statutorily mandated to participate, or necessary outgrowths of those mandates: the planning of Board actions under PROMESA Title V; coordination between the Board and the Commonwealth regarding federal funding, which is a critical input to the fiscal plans and budgets; decision-making regarding contracts and reapportionment requests pursuant to PROMESA § 204; and decisions related to Board governance.

The November 21 and February 8 Letters explained the documents in which these eleven topics were discussed comprised pre-decisional communications that played a role in the Board's policy deliberations.  The Letters also listed the Board's counterparties in these communications, including the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), Hacienda, OMB, ERS,[13] the Governor's office, the U.S. House of Representatives, the U.S. Senate, the U.S.

---

[13]     "ERS" refers to the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico.  3 L.P.R.A. § 761.

Department of the Treasury, the U.S. Department of Homeland Security, the Executive Office of the President, and the Environmental Protection Agency.  In addition, the declaration of Natalie Jaresko, dated April 1, 2019, formally invokes the deliberative process privilege on these grounds, and also makes clear that the Board must withhold documents pursuant to this privilege for the very reason that it exists – namely, to ensure that the Board can engage in open and frank discussions with the federal and Commonwealth governments in order to arrive at policies that will restore Puerto Rico to financial solvency.  Jaresko Decl. at ¶ 7-14, 20-25.  Without the ability to freely engage in these communications, the Board's ability to carry out its responsibilities under PROMESA would be substantially hampered.  *Id.* at ¶ 15, 19.  Not only does this serve the Board's interest, but it also serves the interests of the people of Puerto Rico in having the Commonwealth regain fiscal stability.

To further underscore the importance of maintaining confidentiality of these communications, below are several examples of documents withheld pursuant to this privilege:

- Two April 14, 2017 emails from Ramón Ruiz (the Board) to Gerardo Portela Franco (AAFAF), Pedro Soto (AAFAF) and Natalie Jaresko (the Board) discussing significant concerns regarding whether the impact of certain decisions will result in a fiscal plan for PREPA that achieves PROMESA's goal, as well as how certain rightsizing and healthcare measures in the Commonwealth fiscal plan can be implemented

- A January 11, 2018 email from Gerardo Loran (AAFAF) to Jose Carrion (the Board), copying Gerardo Portela Franco, Mohammad Yassin Mahmud (AAFAF), Christian Sobrino (AAFAF), Natalie Jaresko, and Aaron Bielenberg (McKinsey) attaching a confidential working draft of PRASA's fiscal plan.  The confidential working draft included non-final, pre-decisional analyses and proposals regarding, *inter alia*, PRASA's policies regarding environmental compliance

- An April 13, 2018 email from Gerardo Loran to Natalie Jaresko, copying Gerardo Portela Franco, Mohammad Yassin Mahmud, and Christian Sobrino containing non-final, pre-decisional edits to a draft version of the GDB fiscal plan

Plainly, these documents are shielded from disclosure by the deliberative process privilege.  They are pre-decisional, as they involve discussions of fiscal plan drafts.  They are also deliberative, as

the parties to the communications are providing their views regarding the content of the various instrumentalities' fiscal plans in order to develop such plans.  In order to achieve financial solvency for the Commonwealth through PROMESA's prescribed process, representatives of these entities must have the ability to debate the contents of the fiscal plans and other governmental decisions without fear that their particular views could be disclosed to the public.  Accordingly, the Board has met the criteria for invocation of the deliberative process privilege under *Bhatia*.

CPI, on the other hand, has not articulated any interest in these documents that would outweigh the importance of the Board's fulfillment of its mandate under PROMESA and the principles underlying the privilege.  For similar reasons, the Puerto Rico Court of Appeals rejected an earlier broad, untethered request filed by CPI seeking documents from the Commonwealth Government. *Belingeri*, 2011 WL 7268174.  In *Berlingeri*, the Court found the documents requested by CPI—the agenda, appointments, and visitors' logs of the Governor and the Chief of Staff—were "intrinsically linked to the Governor's deliberative process" because "disclosing the identity of the people with whom the Executive Branch meets and with whom it consults is equivalent to disclosing the substance or direction of the Governor's judgment and his mental processes." *Berlingeri*, 2011 WL 7268174, at *8.  But there, like here, CPI asserted only a "vague and imprecise" articulation of how the documents requested "help them in achieving the objective pursued."  *Id.* at *7.

CPI's requests here go even further: Requests (k) and (l) explicitly seek not only the identities of those with whom the Board communicated, but the contents of such communications as well.  The Board has provided thousands of responsive documents, but others have been withheld from disclosure because of their deliberative nature, in recognition of the Board's ability

and need to freely correspond with the Commonwealth and U.S. governments as part of its policy deliberations.

**B.     The Board Is Entitled to Withhold Communications Between Itself and the Commonwealth Government Subject to the <u>Common Interest Privilege</u>.**

          **1.     The Common Interest Privilege Protects Information Shared Between Counsel for the Commonwealth Government and the Board, as Parties With Identical Legal Interests.**

In essence, the common interest privilege is an application of the attorney-client privilege. It applies where several entities or individuals work together on a common matter while separately represented by different legal counsel and is an exception to the general principle that privileged communications made in the presence of, or shared with, third parties destroys the confidentiality of those communications. *Crane Security Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 16 (D. Mass. 2017). Also known as the joint defense privilege or community-of-interest privilege, it "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others," *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007), but it also allows parties themselves to discuss privileged matters without waiving the privilege. *Hilsinger Co. v. Eyeego, LLC*, Civil Action No. 13-cv-10594-IT, 2015 WL 11120842, at *2 (D. Mass. Aug. 13, 2015) ("The community-of-interest privilege prevents clients from waiving the attorney-client privilege when attorney-client communications are shared with a third person who has a common legal interest with respect to these communications.").

In order to invoke the common interest privilege, the interest between the parties must be legal in nature, "not solely commercial." *Crane*, 230 F. Supp. 3d at 16 (citations omitted). For this privilege to apply, the parties must share "an identical (or nearly identical) legal interest" and must establish "cooperation in fact toward the achievement of a common objective." *FDIC v.*

*Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000).[14]  Furthermore, the shared interest in question need only be "in the subject matter of the [privileged] communication."  *Crane*, 230 F. Supp. 3d at 16.  In other words, the existence of some adversity of interest between the parties on areas outside of the subject of the communication does not negate application of the privilege.  *Marquez v. United States*, 258 F. Supp. 2d 7, 14-15 (D.P.R. 2003), *aff'd sub nom. Marquez v. United States*, 91 F. App'x 162 (1st Cir. 2004).

Although the Commonwealth courts have not yet had the opportunity to consider whether to formally adopt the common interest privilege, the District of Puerto Rico has noted its existence on multiple occasions.  *See id.*, 258 F. Supp. 2d at 15 (acknowledging potential applicability of joint defense privilege while declining to apply it because requesting party did not show statements were made in furtherance of joint interests); *EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*, Civ. No. 11-1555(FAB/SCC), 2012 WL 12996198, at *1 (D.P.R. Oct. 24, 2012) ("[A]n indemnification agreement can give rise to a sufficient community of interests to invoke the [common interest] doctrine.").  The First Circuit also recognizes the common interest privilege.  *Cavallaro v. United States*, 284 F.3d 236, 249-50 (1st Cir. 2002) (common interest privilege applies to communications made by the client or the client's lawyer to a lawyer representing another in a matter of common interest).  Furthermore, should Commonwealth courts be presented with the opportunity to adopt the common interest privilege, they are likely to do so, as the common interest is merely an extension of the attorney client privilege, which the Puerto Rico

---

[14]     Based on statements made in its belated letter questioning the propriety of the Board's invocation of the common interest privilege, CPI appears to believe the privilege applies only to parties involved in pending criminal prosecutions.  *See* March 1 Letter  at 5 ("[E]ven in the context of the United States, this privilege applies in the context of common defense agreements regarding criminal defendants.").  That is incorrect.  The privilege also applies in civil litigation, "and even in purely transactional contexts."  *Teleglobe*, 493 F.3d at 364.

Supreme Court has recognized as an important privilege grounded on serious public policy considerations under Commonwealth law.[15]  *See, e.g.*, *Ades v. Zalman*, 115 D.P.R. 514, 15 P.R. Offic. Trans. 675, 682-83 (P.R. 1984).

The common interest privilege properly covers numerous confidential, privileged communications shared between the Commonwealth government, including AAFAF, and the Board, as they share "an identical (or nearly identical) legal interest" and must establish "cooperation in fact toward the achievement of a common objective."  *FDIC*, 202 F.3d at 461. Indeed, the Board is statutorily mandated to represent the Commonwealth (and its covered territorial instrumentalities) in litigation involving the Commonwealth brought in the Title III court.  PROMESA § 315(b).  In fact, the Board has represented the Commonwealth or one of its covered territorial instrumentalities in over 40 adversary proceedings within the Title III cases. The sharing of otherwise-privileged communications between the Commonwealth government and the Board in the context of their statutorily-mandated relationship is protected from disclosure.

> **2.  The Board Properly Withheld its Communications With the Commonwealth Government Covered by the Common Interest Privilege.**

The Board withheld from production approximately 3,106[16] documents under the common interest privilege.  These documents and communications are between the Commonwealth government and the Board and would otherwise be privileged under the attorney-client privilege and/or work product doctrine because they contain or reflect legal advice and/or were created in

---

[15]     The Puerto Rico Supreme Court recently engaged in a similar exercise when it adopted the Delaware Court of Chancery's doctrine that allows a derivative plaintiff, on a sufficient showing of need, to obtain access to certain privileged corporate documents without waiving the privilege as to third parties. *Casasnovas v. UBS Fin. Servs.*, 198 D.P.R. 1040 (P.R. 2017) (certified translation attached as Exhibit D to the Board's Motion Submitting Certified Translations).

[16]     A significant portion of the documents withheld under this basis are also subject to withholding pursuant to the deliberative process privilege.

anticipation of litigation.   The common interest privilege between the Board and the Commonwealth Government allows the Board to withhold these communications from disclosure in response to CPI's requests even though they were shared between these two entities.

One of CPI's objections to the Board's invocation of the common interest privilege is that "it appears that [the Board is] using this category as justification for documents unrelated to any 'common interest agreement.'"  March 1 Letter at 5.  This misses the point entirely.  The common interest privilege does not merely shield documents and communications related to the parties' determination that they share a common legal interest.  Rather, the common interest privilege allows those parties to communicate regarding that shared legal interest without fear of disclosure of their communications.  As discussed above, it is self-evident from PROMESA that the Board and the Commonwealth have numerous common legal interests.

For the avoidance of doubt, however, and without disclosing any privileged information included therein, below is a description of example communications between the Board and AAFAF that are covered by the common interest privilege:

- A July 2017 email chain between Martin Bienenstock (counsel to the Board), Nancy Mitchell (counsel to PREPA), Mohammad Yassin (in-house counsel at AAFAF), Paul Possinger (counsel to the Board), Ehud Barak (counsel to the Board), and Maja Zerjal (counsel to the Board) discussing legal strategy regarding the administration of Title III cases

- A July 2017 email chain between attorneys at O'Melveny & Myers (counsel to AAFAF), attorneys at Proskauer (counsel to the Board), in-house counsel at AAFAF, in-house counsel at the Board, and José Santiago Ramos (GDB) regarding the Board's review and approval of proposed GDB transaction pursuant to requirements of PROMESA § 207 [FOMB-R-00053906]

These documents are examples of the type of communication that has taken place (and will continue to take place) between the Board and the Commonwealth government in response to pending or threatened litigation relating to the Title III proceedings as well as the fiscal plans of the Commonwealth or its covered territorial instrumentalities.  Without the ability to freely share

this information, the Commonwealth government and the Board could not achieve their shared legal interests in defending the Commonwealth in the Title III proceedings.

### C.     The Board Properly Withheld Documents Related to the Title III Mediation.

The Board withheld 1,721 documents related to the ongoing, confidential mediation ordered by the Title III Court.  These documents were implicated by CPI's broad request for any and all communications between the Board and the federal government.  Because the mediators in the Title III mediation are federal judges, communications with them and their staff were technically covered by CPI's wide-ranging request for all communications with the federal government.  In the November 21 Letter, the Board informed CPI of this withholding:  "the Board has not provided documents that are part of the Title III mediation … [because they] fall within the scope of the mediation privilege, and are protected from disclosure by the Title III Court's order that the mediation process 'will remain confidential.'  Case No. 17-bk-3283, ECF No. 329, at 3."  [ECF No. 65-3 at 1-2.]

Communications related to mediations are protected by the mediation privilege, which insulates from disclosure all "communications to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation." *ACQIS, LLC v. EMC Corp.*, No. 14-cv-13560, 2017 WL 2818984, at *2 (D. Mass. June 29, 2017). Communications relating to the Title III mediation are further protected by the Title III Court's express order that mediation must take place in strictest confidence, and that *all* communications related to the mediation must remain "confidential."  *In re Fin. Oversight and Mgmt. Bd. for P.R.*, Case No. 17-bk-3283.  [ECF Nos. 329, 430.]  The Title III Court has required strict compliance with this Order.  Just last year, the members of the Title III mediation team—Chief Judge Barbara

J. Houser, Judge Thomas L. Ambro, Judge Nancy Friedman Atlas, Judge Roberta A. Colton, Judge Christopher M. Klein, and Judge Victor Marrero—requested the Title III Court "adopt a zero-tolerance policy with respect to mediation parties disclosing in court . . . what is, or is not, happening in the confidential mediation process that has been established in these cases." Case No. 17-bk-3283. [ECF No. 1836.] In response, Judge Swain entered a standing order "regarding separation of mediation and litigation activities," which prohibits mediation parties from disclosing any information being provided in connection with the mediation process. Case No. 17-bk-3283. [ECF No. 1841.] Violations of the order are subject to harsh sanctions, including striking of pleadings, denial of opportunities to present oral argument, denials of relief, and preclusion of opposition to requests for relief. *Id.* at 1-2.

Each of the communications withheld on this ground is a communication to, from, or copying the federal judges who have been appointed to serve as mediators or the clerks and staff who assist them in coordinating and conducting the mediations. The communications were sent or received between June 29, 2017—after the June 23, 2017 order appointing the members of the mediation team—and April 30, 2018 (the parties' mutually-agreed upon end-date for CPI's requests). Other senders and recipients of the communications include the other participants in the Title III mediation, such as representatives of the Commonwealth and AAFAF, representatives of creditor groups, and agents and financial advisors who have been retained by the mediation team and the parties to the mediation. Because the mediators themselves were senders of or recipients on each one of these communications, they fall squarely within the mediation privilege.

CPI has acknowledged that communications related to the mediation are confidential and exempt from production under Puerto Rico law. *See* March 1 Letter at 2. Nevertheless, CPI challenges the Board's withholding of documents on the grounds that it "is impossible to know"

26

whether the specific documents withheld "truly fall into the protected category," and questions the Board's withholding of "attachments," which CPI claims may be "comprised in the obligation to produce." *Id.*  CPI's vague insinuation that the communications withheld may not truly fall within the mediation privilege fails because, as set forth above and in the Board's prior communications to CPI, each of the documents withheld are communications authored or received by federal court personnel in connection with the Title III mediation.  These representations adequately support the withholding of the documents, and CPI's insinuations regarding the Board's candor are meritless. *Glenwood Farms, Inc. v. O'Connor*, 666 F. Supp. 2d 154, 179 (D. Me. 2009) ("a judge has the right, in most circumstances, to rely on [an attorney's] representations") (citing *Theodor v. New Hampshire*, 614 F.2d 817, 822 (1st Cir. 1980)).

As for CPI's apparent belief that the Board may nevertheless be obligated to provide attachments to privileged mediation communications, CPI is incorrect.  It is irrelevant whether information provided to mediators is contained in email text or as attachments to email communications.  Documents produced and exchanged in connection with a mediation, including mediation statements and analyses exchanged in the course of an ongoing mediation, are protected from disclosure by the mediation privilege.  *See, e.g.*, *Benson v. Rosenthal*, No. 15-cv-782, 2016 WL 3001129, at *9 (E.D. La. May 25, 2016).  Protection of documents either "conveyed to or prepared by the mediator" is critical to ensuring that parties to a mediation may "communicate openly and honestly," without fear that their sensitive information might be disclosed.  *Folb v. Motion Picture Industry Pension & Health Plans*, 16 F. Supp. 2d 1164, 1172 (C.D. Cal. 1998), *aff'd*, 216 F.3d 1082 (9th Cir. 2000).  The attachments withheld—which consist of mediation statements, requests for sensitive financial information, analyses prepared by the Board, the Commonwealth, and their respective advisors, and other written communications between the

Board, the mediation team, and other participants in the mediation process—contain precisely the type of sensitive information that the mediation privilege is designed to protect, and receive the same protection as the emails to which they are attached.   Accordingly, the Board's communications with the Title III mediators, including their attachments, are fully exempt from disclosure.

### D.   The Board Properly Withheld Documents Pursuant to PROMESA Section 208.

The Board withheld 50 documents related to a report on discretionary tax abatement agreements prepared by the Commonwealth as required by PROMESA § 208.   As Puerto Rico courts have recognized, PROMESA expressly prohibits the Board from disclosing "the content of [this] report." *Id.* § 208(b) ("the members and staff of the Oversight Board shall not disclose the contents of the [tax abatement] report…."); *Espacios Abiertos, LLC v. E.L.A.*, KLAN201801348, at 7 (P.R. Ct. App. Mar. 6, 2019) (Certified Translation).

Consistent with this statutory mandate, as the Board informed CPI on February 8, 2019, it withheld fourteen preliminary and final versions of the section 208 report produced by the Puerto Rico Department of Treasury ("Hacienda") in the summer of 2017, as well as any communications "that revealed *the contents* of [the] report[]."   February 8 Letter, at 2 (emphasis added).   The remaining thirty-six documents withheld are communications exchanged between the Board and Hacienda from April 2017 through August 2017, the period when Hacienda was preparing the report.   The withheld communications specifically addressed the contents of the report:   they contain exchanges regarding which tax abatements would be addressed by the report, the level of detail the report should include, and the analyses to be incorporated into the report.

CPI acknowledges that PROMESA forbids the Board from disclosing the contents of the report.   Nevertheless, CPI questions the Board's withholding of documents pursuant to PROMESA

§ 208(b) on two grounds: (*i*) the Board's letter indicates it withheld "reports," when correspondence indicates that only one report has been submitted, and (*ii*) the Board withheld "communications and attachments that reveal the content of these reports," but did not provide sufficient information for CPI to assess its contentions.  March 1 Letter at 2-3.

CPI's initial concern is easily explained, and would have been had CPI engaged in the conferral process mandated by Local Rule 26 as opposed to immediately seeking Court intervention.  The Board referred to "reports" because it withheld multiple copies of both drafts and final versions of the section 208 report.  As for the second concern, the Board has explained to CPI that it withheld communications that discussed specific content to be included in the report. It is unclear what more CPI requires to "assess [the Board's] contentions."  Moreover, as CPI should be aware, the Board was careful *not* to withhold every communication that related to the report in any way.  In fact, the Board provided communications between the Board and Hacienda which discussed the timing for Hacienda's completion of the report, but which did not address or reveal its contents.  The Board only withheld documents the disclosure of which would reveal information it is statutorily obligated to protect.

E.    **The Board Properly Withheld Documents Related to Law Enforcement Investigations.**

The Board withheld 47 documents, dated between September 2017 and March 2018, related to law enforcement investigations being pursued by federal officials.  Puerto Rico, like many jurisdictions, expressly exempts such documents from disclosure, particularly where, as here, either the identity of a confidential informant or investigative techniques and procedures may be revealed if the documents at issue were to be disclosed.  3 L.P.R.A. § 292(j); *see also Kay v. FCC*, 867 F. Supp. 11, 15 (D.D.C. 1994) (recognizing that the FOIA law enforcement exemption "protects from mandatory disclosure any records or information 'compiled for law enforcement

purposes,' the release of which would 'interfere with enforcement proceedings'" (citing 5 U.S.C. § 552(b)(7)(A)).  The Board informed CPI of this withholding in the November 21 Letter: "[T]he Board has not provided documents relating to law-enforcement investigations … [because they] would interfere with pending law enforcement proceedings and/or reveal law enforcement investigative techniques and procedures."  November 21 Letter at 2.

Nonpublic information about investigations, investigatory techniques, and confidential informants is exempt from disclosure.  Information regarding investigatory techniques and procedures should be withheld where such disclosure would "reasonably be expected to risk circumvention of the law."  *Shapiro v. U.S. Dep't of Justice*, 78 F. Supp. 3d 508, 519 (D.D.C. 2015) (citing 5 U.S.C. § 552(b)(7)(E)).  Accordingly, documents may reveal "techniques, potential targets … and/or the nature of the information gleaned via" the use of certain law enforcement techniques if disclosure of the documents would permit targets of an investigation "to avoid detection by developing countermeasures."  *Shapiro*, 78 F. Supp. 3d at 520.  Information provided to law enforcement agencies in confidence likewise falls within the exemption.  *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 234-35 (P.R. 1987), 18 P.R. Offic. Trans. 264, 280-282; *Bagwell v. U.S. Dep't of Educ.*, 183 F. Supp. 3d 109 (D.D.C. 2016) ("[A] source should be deemed confidential if the source furnished information with the understanding that the agency would not divulge the communication except to the extent the agency thought necessary for law enforcement purposes.").

Each of the communications withheld on this ground is a communication to, from, or with carbon copy to an individual from an agency located within the U.S. Department of Justice or the U.S. Department of Homeland Security who was actively involved in the investigation of criminal activity.  Jaresko Decl. ¶ 27.  None of the communications pertain to investigations conducted by

the Board.  *Id*.  At the time that the communications were received, the federal investigators at issue were conducting investigations "aimed at discovering a violation of a criminal or civil statute."  *López Vives*, 118 D.P.R. 219, 18 P.R. Offic. Trans. at 264, 284-85; *see also U.S. Bartko v. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018) ("To qualify as law-enforcement records [under FOIA], the documents must arise out of investigations which focus directly on specifically alleged illegal acts which could, if proved, result in civil or criminal sanctions.").

Disclosure of the documents would reveal nonpublic information about these sensitive federal investigations.   Jaresko Decl. ¶ 27.   Specifically, the documents reveal information regarding investigatory techniques and procedures, including the methods by which the federal investigators conducted their investigations, as well as the subjects of the investigations.  *Id*.  The documents also contain information regarding individuals who have provided information to federal investigators on a confidential basis, and with the expectation that their identities would not be revealed.  *Id*.

CPI acknowledges that communications related to law enforcement investigations may be withheld, but erroneously contends that such documents are always subject to disclosure if the law enforcement investigation is "completed."   March 1 Letter, at 3.   That is not the law.   To the contrary, Puerto Rico law recognizes that, when an investigation has concluded, the requirement of confidentiality may be reduced, but is not eliminated.  For example, Puerto Rico courts have squarely held that "the names of informers who participate in an already closed investigation are protected by Rule 32."  *López Vives*, 118 D.P.R. 219 at 234-35, 18 P.R. Offic. Trans. at 282. Accordingly, the fact that some of these investigations may have been completed—something of which the Board cannot be certain, because the investigations were conducted by federal law enforcement agencies—is not conclusive.  The documents at issue here must still be withheld

because they would reveal the identities of confidential informants.  Moreover, the documents at issue would reveal key information regarding steps taken by the federal investigators to conduct their investigations, including individuals the investigators spoke with and methods the investigators used to gather information.  Disclosure of these documents would therefore allow individuals to tailor their actions, including their interactions with the Board, to elude future law enforcement investigations.  Accordingly, these documents are not subject to disclosure.  Finally, because the investigations are federal government investigations and not investigations undertaken by the Board, the Board does not believe it can or should be required to make its own judgment call regarding disclosure of investigation-related documents; instead, the decision to disclose would best be addressed by the pertinent federal agencies.[17]

### F.   The Board Properly Withheld Documents Pursuant to the Official Information Privilege, and/or Because Those Documents Would Impact the Puerto Rico Economy and/or the Board's Ability to Fulfill its Statutory Mandate.

Finally, the Board withheld documents pursuant to the official information privilege, as well as on the independent grounds that the disclosure of these categories of documents might impact the Puerto Rico economy or the functioning and operation of the Board.  These documents contain highly sensitive information to which the Board is only privy in light of the unique role it plays in the Puerto Rican government.

Puerto Rico's official information privilege, which is codified in Puerto Rico Rule of Evidence 514, 32 L.P.R.A. Ap. VI, permits public officials or employees to withhold official information obtained "in the performance of [the official's] duties" to the extent that information "has not been officially disclosed or otherwise made accessible to the public until such time as the

---

[17]     To the extent CPI believes that it is entitled to such information, nothing prevents it from submitting a FOIA request to federal agencies seeking the same information.

privilege is invoked."  Such information cannot be disclosed if its disclosure "would be prejudicial to the interest of the government," *id.*, or otherwise "harm the public interest."  *See also Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153, 17 P.R. Offic. Trans. 182, 192 (P.R. 1986).

To demonstrate that a document is entitled to protection pursuant to this privilege, the party invoking the privilege must provide enough information to identify what interest would be harmed and how disclosure would cause the harm.  *Santiago*, 117 D.P.R. 153, 17 P.R. Offic. Trans. at 197-98; *see also Shea v. McGovern*, 2011 WL 322652, at *6 (D. Mass. Jan. 31, 2011) (holding, under the equivalent investigatory/official information privilege, that a party "must provide enough information regarding what interest would be harmed, how disclosure would cause the harm, and the amount of harm.").  Moreover, in determining whether the privilege applies, courts must determine whether the balance of interests is inclined in favor of maintaining a document in confidence.  *Rodriguez Lara v. ELA de Puerto Rico*, Case No. HSCI201400371, 2016 WL 4772345, at *6 (P.R. Ct. of App. June 23, 2016).[18]  Accordingly, in light of the nature of these documents and the Board's unique role, even if the official information privilege did not apply (and it does), documents in both categories may also be withheld in light of the potential impact of their disclosure.

### 1.    Documents Subject to the Official Information Privilege Which Impact the Puerto Rico Economy

The Board withheld 1,457 documents pursuant to the official information privilege, and in light of their potential impact upon the economy of Puerto Rico.  Communications falling into this category include conversations between the Board, on the one hand, and individuals from AAFAF, from Hacienda, from other Commonwealth agencies, from the U.S. Department of the Treasury,

---

[18]    A certified translation of *Rodriguez Lara* is attached as Exhibit E to the Board's Motion Submitting Certified Translations.

and from other federal agencies, on the other hand.  These documents contain or discuss highly sensitive financial data submitted to the Board by the Commonwealth government and its agencies, the disclosure of which would have significant impacts upon the economy of Puerto Rico and the generation of government revenue.  They also contain highly sensitive information regarding policy deliberations of the federal government which have the ability to impact the economy of Puerto Rico.

Given the unique role the Board plays, it is to be expected that it would come into possession of information that, if made public, would have a material effect on both the financial markets and on the revenues of the Puerto Rico government.  The Board is responsible for providing a method whereby Puerto Rico may achieve fiscal responsibility and access to the capital markets.  PROMESA § 101.  To effectuate that purpose, the Board must have access to the Puerto Rico government's sensitive financial information, including information regarding the government's revenues.  The Board must also have access to information regarding the financial relationship between Puerto Rico and the federal government, because that relationship has a significant impact on Puerto Rico's ability to achieve PROMESA's goals.  That information is provided to the Board by its counterparts in the federal and territorial governments in confidence, with the understanding that such information will not be disclosed.  Jaresko Decl. ¶¶ 28-29.

Each of the documents withheld in this subcategory was obtained in confidence from a federal or a territorial official.  Although disclosing specific information regarding the contents of the documents or the senders and recipients would vitiate the basis on which it withheld them in the first place, the Board can disclose the information was provided to Board members and employees in furtherance of their duties, and relates to the Board's creation of fiscal plans and budgets for the Commonwealth and its instrumentalities.  Jaresko Decl. ¶ 29.  Because these

documents represent confidential official information received in confidence by the Board, or communications discussing such confidential official information, these documents fall squarely within Rule 514 of the Puerto Rico Rules of Evidence.  *Cf. Shea*, 2011 WL 322652, at *6.

Moreover, the balance of interests weighs heavily in the Board's favor. CPI has not articulated any need for the documents beyond its generalized desire to have access to each and every communication the Board has sent to or received from the federal and Commonwealth governments since its inception.  But CPI's right of access to public documents is not absolute. As the Puerto Rico courts have held, this generalized desire for access to information must "yield[] to circumstances of imperative public interest that justify a claim of confidentiality by the state." *Berlingeri*, 2011 WL 7268174, at *4; *see also Soto*, 112 D.P.R. 477, 12 P.R. Offic. Trans. at 617 ("[T]he right of access and to gather information cannot be absolute."); *Ortiz v. Bauermeister*, 152 D.P.R. 161, 175 (P.R. 2000) (although "right of access to public information is fundamental," "[t]hat, however, does not mean that the right is absolute and unlimited"); *cf.* 5 U.S.C. §§ 552(b)(4), (8).[19]  There can be little doubt that documents which run the risk of significantly impacting the Commonwealth's economy demonstrate a sufficiently "imperative" public interest to justify the Board's decision to withhold them.

### 2.   Documents Subject to the Official Information Privilege Which Impact the Board's Ability to Perform Its Duties.

Finally, the Board has withheld approximately 43 documents which are subject to the official information privilege, and on the independent ground that their disclosure would cause significant harm to the Board's ability to conduct its duties.  The Board was judicious in its designation of these documents.  Indeed, these documents comprise a total of only seven email

---

[19]     A certified translation of *Ortiz* is attached as Exhibit F to the Board's Motion Submitting Certified Translations.

chains.  Six of those chains include exchanges between the Board and members and staff of Congress, and one of those chains includes exchanges between the Board and AAFAF.  Like the documents described above, they contain sensitive information the Board has maintained in confidence, and were not made public prior to CPI's request for their production.  The information they contain relates to the Board's relationships with its counterparts in the federal and Commonwealth governments which would be harmful to the Board if disclosed.

Before withholding documents pursuant to this subcategory, the Board carefully considered the potential negative impact of their disclosure on the Board's relationships within the federal and Commonwealth governments, and determined that the public interest would be harmed "through the undue disclosure of what [had previously been] official confidential information." *Santiago*, 117 D.P.R. 153, 17 P.R. Offic. Trans. at 192.

Here again, the Board's unique role informs its need to withhold documents which are harmful to its relationships:  the Board was formed for the specific purpose of restoring the Commonwealth to fiscal sustainability, but was created by Congress and is statutorily obligated to report on its activities to Congress.  It is therefore critical to the functioning of the Board that it be able to communicate in confidence and with candor with both the federal and the Commonwealth government, and likewise for federal and Commonwealth government officials to communicate in confidence and with candor with the Board.  Jaresko Decl. ¶ 30.  As described above, the Board communicates with the Commonwealth government on a regular basis in connection with its oversight of the Puerto Rico economy.  The Board likewise communicates on a regular basis with its federal government counterparts, and its relationships with the federal government—to which it has routinely turned both to assist in developing fiscal plans and to seek the federal government's assistance in, for example, post-hurricane relief efforts—are equally critical to its ability to fulfill

its mission.   Undue disclosure of previously confidential documents would harm those relationships and impair the Board's ability to perform its critical tasks.  *Id.*

Moreover, the balance of interests would not weigh in favor of production of these emails for the same reasons articulated above:  CPI has provided no specific justification for its need to access these documents which can outweigh the Board's showing that disclosure of these documents is harmful to its interests and to the delicate relationships it maintains with its federal and Commonwealth government counterparts.  *Berlingeri*, 2011 WL 7268174; *see also Soto*, 112 D.P.R. 477, 12 P.R. Offic. Trans. at 617.  Thus, the balancing of interests weighs heavily in favor of a finding that the Board is not obligated to provide these documents.

As the above demonstrates, the Board has provided CPI with numerous documents in response to the Complaint.  The Board's remaining communications with the Commonwealth and/or U.S. governments have been withheld by the Board for valid purposes under Puerto Rico and federal law.  CPI should not be permitted to continue demanding that the Board provide it with these documents in light of the exceptions to production claimed herein.

## II.    GOOD CAUSE EXISTS TO ENTER THE PROTECTIVE ORDER UNDER PROMESA § 105.

In addition to the multiple reasons discussed above as to why the Board is justified in not providing certain categories of documents to CPI because of the existence of a privilege or other exception to disclosure, PROMESA § 105 expressly precludes this (or any) Court from entering any orders against the Board regarding its maintenance, protection, disposition, and sharing of documents related to its official duties in carrying out PROMESA.  Section 105 states: "The Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken to carry out [PROMESA]."  48 U.S.C. § 2125.  In enacting this provision,

Congress recognized the Board's full attention would be required for Puerto Rico's recovery efforts to be successful.  It therefore enacted measures, including § 105, to protect the Board from lawsuits that would distract from its task or deter it from acting, especially lawsuits imposing obligations on it such as to locate, review, screen for privilege, and produce thousands of documents.  *See UTIER v. PREPA*, Adv. Proc. No. 17-ap-229-LTS, Sept. 26, 2018, at 29 (dismissing Contract Clause claims seeking declaratory relief against Board pursuant to PROMESA § 105).  [ECF No. 62.]

The maintenance, use and protection of the Board's documents, especially those documents comprising its communications with the Commonwealth and federal governments, are quintessentially actions taken to carry out PROMESA.  The Complaint acknowledges this, as CPI expressly seeks the requested documents to report on matters relating to how the Board is carrying out its duties under PROMESA.  [ECF No. 1 at 5.15, 5.16, 5.22.]  Under PROMESA § 105, the Board cannot be liable for failing to comply with the requests made by CPI in the Complaint.

PROMESA § 106(e) provides additional context as to the lack of CPI's right to access documents impacting the Board's ability to carry out its duties. Section 106(e) provides: "There shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this [Act]." Although CPI is not challenging a certification determination of the Board, it is nevertheless significant that Congress went to the extraordinary length of insulating the Board from any District Court's interference with its decisions on fiscal plans, budgets, restructuring petitions, and the like.  Section 106(e) protects the Board from pressures by creditors, the government, the public, and the courts, thereby enabling it to make decisions based on its best judgments without being pressured by the creditors to provide less public services and the people to provide more.  It would be incongruous for Congress to have

protected the Board from such pressures, while opening up the Board to discovery of everything involved in its decision-making processes that cannot be challenged.  By analogy, when litigants complained the Board made wrong decisions in its work on fiscal plans, Judge Swain ruled: "To be meaningful, denial of jurisdiction to review the certification of the Fiscal Plan thus must be understood preclude the review of claims that particular aspects of the Fiscal Plan are noncompliant with Section 201(b) requirements." *In re Fin. Oversight and Mgmt. Bd. of P.R.*, 297 F. Supp. 3d 269, 283 (D.P.R. 2018), *appeal docketed*, No. 18-1214 (1st Cir.).

## CONCLUSION

For the foregoing reasons, the Court should find the materials withheld by the Board were properly withheld pursuant to the exceptions recognized under Puerto Rico law.

Dated:  April 1, 2019
San Juan, Puerto Rico

Respectfully submitted,
*/s/ Luis F. del Valle*
Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
dvelawoffices@gmail.com

**DEL VALLE EMMANUELLI LAW OFFICES**
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel.: 787-977-1932
Fax: 787-722-1932

*/s/ Guy Brenner*
Guy Brenner (*pro hac vice*)

**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 0004
Tel.: 202-416-6800
Fax: 202-416-6899
Email: gbrenner@proskauer.com

*Attorneys for the Financial Oversight and Management Board for Puerto Rico*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 1, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record,

and all CM/ECF participants in the case.

*/s/ Luis F. del Valle Emmanuelli*
Luis F. del Valle Emmanuelli
USDC No. 209514
devlawoffices@gmail.com

**DEL VALLE EMMANUELLI LAW OFFICES**
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932

*Attorney for the Financial Oversight and Management Board for Puerto Rico*