IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CENTRO DE PERIODISMO INVESTIGATIVO,<br>          Plaintiff,<br><br>                 v.<br><br>FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>          Defendant. | Civil No. 17-1743 (JAG/BJM) |

## ORDER AND REPORT & RECOMMENDATION

Centro de Periodismo Investigativo ("CPI") filed a complaint against the Financial Oversight and Management Board for Puerto Rico ("the Board") seeking to enforce its right of public access of information pursuant to the Constitution of the Commonwealth of Puerto Rico. Dkt. 1. CPI seeks injunctive relief from the Board in the form of disclosure of Board documents and communications. Dkt. 1 at 20–21. The Board sought to reassign the case to the judge overseeing bankruptcy proceedings and moved to dismiss the motion for failure to state a claim and lack of subject matter jurisdiction. Dkt. 22. The parties exchanged motions. On February 20, 2018, District Judge Jay García-Gregory issued a ruling on the motion to dismiss. Dkt. 36. Now before the court is CPI and the Board's dispute over the categories of documents that the Board contends are protected from disclosure and CPI argues must be produced in compliance with the court order. Dkt. 85; Dkt. 90; Dkt. 93; Dkt. 99. As discussed below, I recommend that the court deny CPI's request for production of documents that the Board has withheld under the law enforcement investigation privilege and the fourteen draft reports withheld under PROMESA § 208. As to the balance of the documents the Board has withheld, I find that the court lacks at this time sufficient information to rule, and therefore order the Board to produce detailed privileges logs in support of its requests to withhold.

## BACKGROUND

Judge García-Gregory ordered the Board to produce the documents CPI requested unless there existed adequate support from Puerto Rico law to withhold a document. Dkt. 36 at 33–34.

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 2 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                          2

Judge García-Gregory then referred the case "to a Magistrate Judge to establish case management deadlines for the production of the requested documents. The Magistrate Judge will handle discovery disputes, provided the parties have complied with the meet and confer requirements of Local Rule 26(b) and have adequately justified any request for a protective order." Dkt. 36 at 34. He issued an order stating:

> ORDER REFERRING CASE to Magistrate Judge Bruce McGiverin for an ISC and to set discovery deadlines. The parties shall raise any issues they might have regarding the process of producing the documents. The Magistrate shall, in his discretion, hold hearings or create case management orders. All discovery issues shall be addressed by the Magistrate in the first instance. The Magistrate shall set his own procedures to address any discovery issues.

Dkt. 37.

Motions followed, and the parties met for an initial scheduling conference in early June 2018 where they summarized their positions. Dkt. 50. CPI stated its desire for all public documents and for privilege logs with any documents the Board withheld. Dkt. 50 at 2–3. The Board maintained its disagreement with Judge García-Gregory's order and put forth its own interpretation of Puerto Rico law. Dkt. 50 at 4. The parties agreed that this case is for document disclosure rather than "conventional discovery." Dkt. 50 at 5. The parties began negotiating the scope of document review and production. *Id.* CPI and the Board conferred and sent e-mails discussing timelines, search terms, and other processes. A subsequent joint informative motion laid out the terms on which the parties agreed that documents would be produced. Dkt. 55. Periodic communications and updates punctuated the following three months.

In September 2018, CPI requested a status conference and complained at the pace of production, alleging that no documents had been produced and the Board's first estimated production deadline had passed. Dkt. 62 *but see* Dkt. 99 at 7 n.2. The parties dispute the date of the first production, but they agree that some documents were withheld from the October 12, 2018 production. Dkt. 99 at 7. According to CPI, the production also included redacted documents. Dkt. 93-1 at 3. There followed an exchange of letters between counsel about the production contents and pace. CPI twice moved for a status conference in front of Judge García-Gregory.

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 3 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                           3

Dkt. 63 at 8; Dkt. 65 at 6–7. The Board informed CPI in a November 7, 2018 letter that it had not disclosed all documents responsive to CPI's request, and it would provide CPI with information regarding the withheld communications. Dkt. 93-1, Ex. 6. Two weeks later, the Board outlined five categories which it did not include in its production of communications with the federal government. Dkt. 93-1, Ex. 7. Counsel debated over who bore the burden: CPI to justify production or the Board to justify withholding. Dkt. 65; Dkt. 66.

On January 8, 2019, the Board informed CPI that a privilege log would not be provided because the November 21 letter satisfied Rule 26 by outlining the five categories of withheld documents. Dkt. 93-1, Ex. 9. CPI ultimately moved to hold the Board in contempt and moved to compel disclosure of withheld documents. Dkt. 67; Dkt. 69. The Board opposed these motions. Dkt. 72; Dkt. 79.

The parties appeared before me to discuss their disputes. Dkt. 92. CPI submitted an outline of the categories of documents it sought. Dkt. 85. After the hearing, the parties filed briefs with the court outlining why each category of withheld documents should be produced or should be protected from production. Dkt. 90; Dkt. 93; Dkt. 99.

## DISCUSSION

### I.   Public Right of Access

The Constitution of the Commonwealth of Puerto Rico enshrines the right to freedom of speech in Article II, Section 4. The Puerto Rico Supreme Court recognizes in that right the public right of access to information. *Espacios Abiertos v. Roselló Nevares*, Civil. No. SJ 2018-cv-09718 (P.R. Cir. Mar. 6, 2019) *certified translation at* Dkt. 91-3, at *13 (citing *Lopez Vives v. Policia de P.R.*, 118 D.P.R. 219, 230 (1987)). The Puerto Rico Supreme Court has described that right of public access as fundamental, constitutional, and intertwined with the freedoms of speech and press. *Bhatia Gautier v. Roselló Nevares*, 199 D.P.R. 59 (P.R. 2017) *certified translation* at Dkt. 91-2, at *17. While the right of public access is vital to "effective participation of citizens" in the government which represents and serves them, it is not absolute. *Id.* at *17–18. It encompasses only public documents, defined as "every document that is originated, conserved or received in

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 4 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                                 4

any office of the Commonwealth of Puerto Rico pursuant to the law and related to the management of the public matters." *Id.* at *18 (citing 3 L.P.R.A. § 1001(b) (2011)).

The state, here the Board, may claim confidentiality, thus defeating the public right of access, when:

> (a) a law so declares; (2) the communication is protected by one of the evidentiary privileges that the citizens may invoke; (3) reveal the information may injure the fundamental rights of third parties; (4) it deals with the identity of a confidante and (5) it is 'official information' pursuant to Rule 514 of Evidence, 2009, 32 L.P.R.A. Ap. VI (2010) (formerly Rule 31).

*Bhatia*, Dkt. 91-2 at *19 (citing *Colon Cabrera v. Caribbean Petroleum*, 170 D.P.R. 582 (P.R. 2007)).

## II.   Motions to Compel and Invoked Privileges

The Board claims six separate categories of privilege for documents it withheld. As I suggested earlier, the court has sufficient information at this time to rule only on the Board's request to withhold documents under the law enforcement privilege and certain draft reports, and as to those documents I present a report and recommendation for consideration of the presiding district judge.[1] As to the remaining issues, and consistent with the case management authority referred to me, *see* Dkt. 37, I direct the Board to provide detailed privilege logs as further discussed below.

### *Law Enforcement Investigations*

The Board withheld forty-seven documents related to federal law enforcement investigations. Dkt. 90 at 29. "Each of the communications withheld on this ground is a

---

[1] Dkt. 100 at 2–5 (reviewing the authority of a magistrate judge). A magistrate judge has more limited jurisdiction and powers than an Article III judge. Magistrate judges may hear and determine "any pretrial matter . . . except a motion for injunctive relief." 28 U.S.C. § 636(b)(1)(A). Because referral of an issue to a district court cannot confer jurisdiction in the absence of statutory authority, the magistrate judge must raise issues of jurisdictional authority *sua sponte*. *See U.S. Steelworkers of Am., AFL-CIO v. Bishop*, 598 F.2d 408, 411 (5th Cir. 1979); Fed. R. Civ. P. 12(h)(3); *see, e.g.*, *SS&C Techs., Inc. v Providence Inv. Mgmt.*, 582 F. Supp. 2d 255, 256 (D. Conn. 2008). To dispose of these issues would exceed the scope of the referral and the authority bestowed by 28 U.S.C. § 636(b), so a report and recommendation is appropriate.

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 5 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                                      5

communication to, from, or with carbon copy to an individual from an agency located within the U.S. Department of Justice or the U.S. Department of Homeland Security who was actively involved in the investigation of criminal activity." *Id.* at 36 (citing Dkt 90-1 ¶ 27 ("Jaresko Decl.")). The documents contain nonpublic information including investigatory techniques and procedures, subjects of the investigations, and information regarding individuals who cooperated with federal investigators with the expectation that they would remain confidential. *Id.* at 37. In Puerto Rico, "information obtained as a result of an investigation is confidential and . . . may not be subject to inspection, examination or disclosure while the investigation is conducted." 3 L.P.R.A. § 292j. When the investigation ends, that information may be disclosed with certain exceptions. *Id.* Disclosures may not reveal information that would harm "essential rights" of third parties, reveal investigative techniques or procedures, or compromise the identity of a confidant. *Id.* Official information, information declared confidential by law, and information protected by evidence privilege may not be disclosed, either. *Id.*

CPI contends that the Board interprets §292j too broadly, withholding information about investigations which may have ended, making it eligible for disclosure, without distinguishing between disclosable and confidential information. The Board, which identified the documents as dating between September 2017 and March 2018, states that it cannot be certain of whether the investigations remain active because federal law enforcement agencies, not the Board, conduct them. Dkt. 90 at 36–37. The Board defers to federal law enforcement judgment on disclosure, but it notes too that disclosing the documents could enable individuals who are being or might be investigated "to tailor their actions, including their interactions with the Board, to elude future law enforcement investigations." Dkt. 90 at 38.

The Board has a clear interest in protecting these documents, and its objections to disclosure are sound. Section 292j governs the Puerto Rico Department of Justice, and the statute makes disclosure optional, not mandatory. "The information thus gathered may be disclosed upon completion of the investigation pursuant to the norms that the Secretary adopts through regulations." 3 L.P.R.A. § 292j. The Board operates outside the federal Department of Justice and

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 6 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                                          6

is unlikely equipped with the knowledge and procedures needed to disclose its investigations information. CPI implies that law enforcement may have waived its protections against disclosure by providing sensitive information to the Board but provides no case citations to support its seeming rhetorical question. Dkt. 93 at 40. The First Circuit ruled that sharing some information contained in law enforcement documents does not waive the confidentiality protecting the entire document. *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 253 (1st Cir. 2013).

Moreover, every document withheld was generated during federal law enforcement investigations of potential criminal and civil violations, which renders them obtainable through a Freedom of Information Act ("FOIA") request. Dkt. 90 at 37; *see Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018) (documents arising out of investigations focused directly on "specifically alleged illegal acts" qualify as law-enforcement records). A FOIA request for these documents would sidestep the obstacles preventing disclosure here, namely whether the investigations are ongoing and what information law enforcement would consider confidential. The law enforcement agency under FOIA must provide "[a]ny reasonably segregable portion of a record" after redacting any portions that are exempt from production, such as information that would interfere with ongoing investigations, reveal techniques and procedures, or disclose the identity of an individual who gave information on a confidential basis. 5 U.S.C. §§ 552(b), 552(b)(7). This tracks the exemptions under § 292j and ensures that the Board does not unwittingly disclose information that must remain confidential for the time being.

Accordingly, the Board should not have to disclose the documents withheld on law enforcement grounds and need not produce a privilege log. Because this would settle the question, I recommend that the referring judge deny the motion to compel disclosure of law enforcement documents.

*Deliberative Process Privilege*

The Board claims deliberative process privilege applies to 16,395 withheld documents. Dkt. 90 at 16; Dkt. 99 at 11 n.8. Both parties agree that deliberative process privilege plays a fundamental role in facilitating the development of public policy by promoting frankness and

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 7 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                              7

candor among government officers. Dkt. 85-1 at 4; Dkt. 90 at 19; *see also Bhatia*, Dkt. 91-2 at *22. This privilege fulfills the "'substantial public interest . . . in maintaining and ensuring full, frank, open exchanges of ideas between members of the agency and other advisors and the decision maker.'" *Id.* at *23 (quoting P.F. Rothstein and S.W. Crump, *Federal Testimonial Privileges: Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases*, 2nd ed., West, 2012, Sec. 5:3, 433). The dual public interests in disclosure and in confidentiality require a test that acknowledges the costs and benefits of deliberative process privilege.

The document in question must qualify for the privilege; it must be both "deliberative" and "pre-decisional." *Bhatia*, Dkt. 91-2 at *23. The Puerto Rico Supreme Court defines a "deliberative" document as that which "relates to a process in which the public policy is developed or formulated." *Id.* "Pre-decisional" refers to a document that "is prepared to assist in the taking of decisions of the government, that is, prior to taking them." *Id.* Information related to factual matters and objective material in which an agency adopts a position do not qualify as deliberative and pre-decisional. *Id.* at *24.

To invoke the privilege for a qualifying document, the government must apply the following process:

(1) the head of the agency that controls the information must claim it formally, after pondering it;

(2) an officer from the agency must provide the precise reasons why the confidentiality of the documents is claimed, and

(3) the government must identify and describe the information or the documents that it wants to protect.

*Bhatia*, Dkt. 91-2 at *23. The Board cites *Bhatia* in its analysis of the deliberative process privilege, but it falls short of meeting the *Bhatia* standards. The Board does not address the precise reason why each document has been deemed confidential, nor does it identify and describe the information or the documents it seeks to protect except in broad categories. Dkt. 90 at 22–27. Instead, the Board invokes letters in which it identified eleven topics which it deemed protected

by the deliberative process privilege, named other parties involved in communications about those topics, and gave several examples of documents withheld pursuant to its own judgment. *Id.* at 24–25. The Board went further in its second letter to the court, explaining that the communications included opinions and viewpoints of government representatives, but this is too vague to satisfy *Bhatia*. Dkt. 99 at 12. Natalie Jaresko, the Executive Director of the Board, submitted a declaration describing the importance of deliberative process privilege, but she too relies on broad strokes and generalities. *See, e.g.*, Jaresko Decl. ¶¶ 9–13. It seems clear that application of the privilege was duly pondered and that the withheld documents are deliberative and pre-decisional, but the documents remain unidentified. *Id.* "Yet the Puerto Rico Supreme Court's balancing test must require more than a generalized explanation of need for the deliberative process privilege to have any practical impact." Dkt. 99 at 13.

*Espacios Abiertos* clearly states "when the States [sic] asks to maintain the secrecy of the public information it is necessary to apply an analysis of strict judicial scrutiny." *Espacios Abiertos*, Dkt. 91-3 at *15. *Bhatia* expounds on the form that strict scrutiny takes. After the state claims privilege and demonstrates to the court that the documents in question qualify for the privilege, the court balances the interests at stake to determine whether privilege or disclosure shall prevail. *Bhatia*, Dkt. 91-2 at *24. The court may consider a variety of factors, including the litigant's private interest, the public interest in government operations, the availability of the information elsewhere, the issues involved, the government's role in the litigation, and disclosure's impact on the effectiveness of government employees. *Id.* It is at this stage that the state's need for confidentiality may come into play, not prior to the court's opportunity to understand what documents have been withheld as the Board contends. *See Bhatia*, Dkt. 91-2 at *18; Dkt. 99 at 12. To restrict the right of access without due justification would be to deny it "in a capricious and arbitrary way" and would defy the procedures the Puerto Rico Supreme Court put into place. *Id.* (citing *Caribbean Petroleum*, 170 D.P.R. 582). The Board is correct that CPI's main showing of need has been general and focused on the "'fundamental importance'" of the Board's work and its "'enormously significant responsibility.'" Dkt. 99 at 13 (quoting Dkt. 93 at 31–32). This

charmingly myopic complaint overlooks the Board's similar, general claims in support of confidentiality. Dkt. 90 at 38, 40 (referring to the Board's "unique role" and its the "highly sensitive" information, financial data, and policy deliberations that could have "significant impacts" on the economy if disclosed).

The Board's conclusory arguments and vague contours of its claim deprive the court of information necessary to conduct the balancing test and limit the privilege to meritorious documents. Gesturing toward compliance is not compliance.

For the Board to put a judge in the position of understanding the interests at stake, it must fully comply with the process laid out in *Bhatia* and by the Federal Rules of Civil Procedure. *Bhatia*, Dkt. 91-2 at *30. Parties claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. Pro. 26(b)(5)(ii). As it stands, the Board has described four documents not disclosed. Dkt. 90 at 26. The remaining 16,391 are a mystery. Because the information provided is insufficient to weigh the interests at stake, the Board must produce privilege logs that comply Federal Rule 26(b)(5) and satisfy *Bhatia*. The logs must enable this court to weigh the fundamental interests at stake and determine whether the Board's invocation of deliberative process privilege will prevail over the public right to access.

*Common Interest Privilege*

The Board next claims the common interest doctrine for 3,106 withheld documents. Dkt. 90 at 28; Dkt. 99 at 11 n.8. The doctrine protects communications from a client or a client's lawyer with a lawyer representing another litigant in a matter of common legal interest which is the subject of those communications. *Id.* at 249–50. It is not a stand-alone privilege but rather a narrow exception to the third-party waiver rule. *See Cavallaro v. United States*, 284 F.3d 236, 240 (1st Cir. 2002). The Board states that the documents and communications between itself and the government of Puerto Rico for which it claims common interest doctrine applies would also be protected by attorney client privilege or the work product doctrine. Dkt. 90 at 29.

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 10 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                                  10

The First Circuit, but not the District of Puerto Rico, has recognized the common interest doctrine, which protects communications between litigants with identical interests. *See Cavallaro*, 284 F.3d at 249–51. The other district courts in this circuit have also recognized its application. *See, e.g.*, *Bourne v. Arruda*, Civil No. 10-393, 2012 WL 1570831 (D.N.H May 3, 2012) (finding common interest privilege properly invoked based on review of privilege log); *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89 (D. Mass. 2002) (applying common interest privilege to some but not all documents after oral and written arguments and in camera review of documents in question); *Nelson v. City of Cranston*, 116 F. Supp. 2d 260 (D.R.I. 2000) (finding common interest privilege applies based on the party's common interest about the contents of the communication). The Board cites cases in which the District of Puerto Rico acknowledged the common interest privilege but did not apply it. *See, e.g.*, *Marquez v. United States*, 258 F. Supp. 2d 7, 14-15 (D.P.R. 2003), *aff'd sub nom. Marquez v. United States*, 91 F. App'x 162 (1st Cir. 2004).

Puerto Rico law governs the issue of privilege in this case, however, and the Commonwealth courts have not adopted common interest privilege. Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). The Board contends that the Supreme Court of Puerto Rico is likely to adopt the common interest privilege based on the value it places on attorney client privilege but does not set forth any case in which the Court has so stated or implied. The Board must justify withholding these 3,106 documents based on privileges recognized in Puerto Rico, which it should be able to do by its own admission. *See* Dkt. 90 at 29. Moreover, the common interest doctrine "presumes a valid underlying privilege in the first place." *Cavallaro*, 284 F.3d at 240. For the Board to claim it, the Board must first prove its contention that attorney-client privilege or work product doctrine apply to the documents in question.

Even assuming the common interest doctrine applies in this case, then several specific elements must apply to a specific communication. The Board must show that the communications in question were made in the course of and in furtherance of a joint defense effort between the

Board and the third party. *Ken's Foods*, 213 F.R.D. at 93 (quoting *United States v. Bay State Ambulance & Hosp. Rental Serv. Inc.*, 874 F.2d 20, 28 (1st Cir. 1989)). The communications must have been confidential, and that confidentiality must not have been waived. *Id.*; *see Cavallaro*, 284 F.3d at 240. The Board has stated these elements are present, but the justice system requires parties to show, not to tell.

Furthermore, CPI notes that some communications between counsel for the Board and for the government surely cannot be covered by common interest privilege because the Board and government have been opposing parties in at least one case. Dkt. 93 at 35 (citing *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 3:17-BK-3283 (LTS) at Dkt. No. 3435). Opposing each other does not necessarily preclude the common interest privilege from applying in other circumstances, but it exemplifies why privilege logs are vital to distinguishing which communications are privileged and which are not. *See Marquez*, 258 F. Supp. 2d at 14-15. CPI also notes that the Board initially restricted its claim of common interest privilege to communications with the Puerto Rico Fiscal Agent ("AAFAF") but now applies it to communications with the Commonwealth government more generally. Dkt. 93 at 33–34. This constitutes a broad extension of a relatively narrow exception. Two examples that the Board provided include communications between counsel for the Board, for AAFAF, and for the Government Development Bank, which sought Board approval for a proposed transaction. Dkt. 90 at 24. This is precisely the information that the court requires and that Federal Rule 26(b) demands to justify privilege. Privilege is just that, a privilege, and a party must earn it through hard facts and evidence rather than assurances. The Board's two examples indicate that it understands this proposition.

As it stands, the Board has not provided sufficient information for the court to determine whether common interest privilege applies. The Board must provide a thorough privilege log explaining why each communication qualifies under the common interest exception to the third party waiver rule if the court chooses to recognize it. If the court does not recognize the common interest doctrine, the Board still must provide a thorough privilege log explaining why each

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 12 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                                              12

communication is protected by other privileges and disclosing any documents that are not protected.

## *Title III Mediation*

The Board withheld 1,721 documents related to ongoing Title III mediation which it claims fall within the scope of mediation privilege. Dkt. 90 at 31; Dkt. 99 at 11 n.8. CPI does not dispute that mediation-related documents merit protection but rather contests the types of documents that the Board claims are covered. Dkt. 93 at 35. This issue would and must be resolved by a privilege log identifying and describing the documents which the Board identifies as mediation-related. Such a log will enable compliance with the various court orders requiring strict confidence during the mediation process. Dkt. 90 at 25–25 (citing *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 3:17-BK-3283 (LTS) at Dkt. Nos. 329, 430, 1836, 1841).

CPI also objects to the Board's description of what communications fall into this category, which changed between November 21, 2018 and April 1, 2019. Dkt. 93 at 36. The first description included "confidential communications and attachments transmitted between and among the Board and its staff, the Title III mediation team and other parties to the Title III mediation." Dkt. 65-3 at 1. The second referred to "communication[s] to, from or copying the federal judges who have been appointed to serve as mediators or the clerks and staff who assist them in coordinating and conducting the mediations." Dkt. 90 at 32. These are not mutually exclusive, but the evolution in the Board's interpretation of what is privileged underscores the importance of a privilege log with concrete explanations for why the Board believes each document qualifies as privileged.

## *PROMESA § 208*

Section 208 requires the Governor of Puerto Rico to "submit a report to the Oversight Board documenting all existing discretionary tax abatement or similar tax relief agreements to which the territorial government, or any territorial instrumentality, is a party." § 208(b). The statute furthers requires that "the members and staff of the Oversight Board shall not disclose the contents of the report described in this subsection, and shall otherwise comply with all applicable territorial and Federal laws and regulations regarding the handling of confidential taxpayer information."

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 13 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                                          13

§208(b)(2). The Board withheld fifty documents pursuant to § 208. Dkt. 90 at 34. Fourteen are drafts of the report, and thirty-six are "are communications exchanged between the Board and Hacienda from April 2017 through August 2017, the period when Hacienda was preparing the report." *Id.* The Board, which did not provide a privilege log, nevertheless stated that these thirty-six documents "specifically addressed the contents of the report: they contain exchanges regarding which tax abatements would be addressed by the report, the level of detail the report should include, and the analyses to be incorporated into the report." *Id.*

CPI again objects to the lack of a privilege log or other adequate check that the privilege is being properly applied here. Dkt. 93 at 37–39. CPI draws attention to the Board's change in description of these documents, but the language alteration is not so serious as CPI contends. The Board initially stated in a February 8, 2019 letter that it withheld "reports submitted to the Board documenting existing discretionary tax abatements or similar tax relief agreements, as well as confidential communications and attachments that reveal the contents of these reports. These documents include communication by Board members and staff with individuals from Hacienda." Dkt. 83-1 at 2. The more detailed description found in Docket No. 90, *see supra*, seems to be a clarification rather than a "misrepresentation." *See* Dkt. 93 at 37. Regardless, CPI properly distinguishes between the protected "contents of the report" itself, *see* § 208(b)(2), and the broader communications surrounding the report. Dkt. 93 at 38. The Board professes to have taken care in choosing which documents to withhold and which to disclose, and it appears that they have done so, disclosing certain communications regarding the report timeline. *See* Dkt. 90 at 35.

Be that as it may, even communications with information protected by § 208(b)(2) may also contain information that is not confidential. Information concerning anything other than the report's contents shall be treated in compliance "with all applicable territorial and Federal laws and regulations regarding the handling of confidential taxpayer information." § 208(b)(2). Seizing on this distinction, CPI invokes Statement Number 77 published by the Governmental Accounting Standards Board ("GASB") of the Financial Accounting Foundation. *See* Dkt. 93 at 38 n.17. The GASB is a private, non-profit organization that sets public sector accounting standards used in

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 14 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                           14

governmental accounting in the United States. *Governmental Accounting Standards Board*, Bouvier Law Dictionary (2012). Statement Number 77 requires state and local governments that enter into tax abatement agreements to disclose certain information about those agreements, including the specific tax, eligibility criteria, and any commitments made by recipients. GASB 77 ¶¶ 7–8. Where there is a legal prohibition preventing disclosure, the State must provide "a description of the general nature of the tax abatement information omitted and the specific source of the legal prohibition. *Id.* at ¶¶ 7f, 8e. The Board did not address Statement Number 77 in its reply letter. Dkt. 99 at 18–19.

In the *Espacios Abiertos* litigation, the government of Puerto Rico confirmed that it would produce a report in accordance with Statement Number 77. *Espacios Abiertos*, Dkt. 91-3 at *28 n.9. The Court of Appeals determined that the GASB required information distinct from what § 208(b) protects. *Id.* In reversing the lower court decision compelling the government to disclose tax abatement agreements, the Court of Appeals stated, "our determination does not seek 'to suppress access to information to which the Country is entitled.'" *Id.* at *30. The clear acknowledgment that some tax abatement information is distinct from and unprotected by the report's contents implies that some of the withheld communications in this case may include information not protected by § 208(b) confidentiality. Specifically, the *Espacios Abiertos* court found that "information regarding the awarding of discretionary tax abatement agreements in which the particular taxpayers are not identified are not only easily accessible but are published and available for public scrutiny." *Id.* To ensure that the thirty-six withheld communications conform to the *Espacios Abiertos* decision and do not overextend protections, a privilege log must be produced. The fourteen withheld drafts may not be disclosed pursuant to § 208(b), and no privilege log need be produced for those documents. As to those fourteen drafts, I recommend that the court deny CPI's motion to compel.

*Official Information Privilege*

Pursuant to the official information privilege, the Board withheld 1,457 documents in light of their potential impact on Puerto Rico's economy and another forty-three documents that "would

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 15 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                              15

cause significant harm to the Board's ability to conduct its duties." Dkt. 90 at 38, 41. Official information privilege is codified in Puerto Rico Rule of Evidence 514 at 32A L.P.R.A. Ap. VI (2009).[2] Official information is information "acquired in confidence by a person that is an officer or public employee in the carrying out of his duty that has not been officially revealed nor is accessible to the public until the moment the privilege is invoked." *Bhatia,* Dkt. 91-2 at *19 (citing 32A L.P.R.A. Ap. VI R. 514(a)). If a court "concludes that the matter is official information and divulging it is forbidden by law, or [that] divulging the information in the action would be prejudicial to the interests of the government," then the privilege applies. *Id.* at *20 (citing 32A L.P.R.A. Ap. VI R. 514(b)). The government bears the burden to "present evidence and show the existence of the compelling interest of greater hierarchy than the values protected by this right of freedom of information of the citizens." *Id.* at *21 (citing E.L. Chiesa Aponte, *Tratado de derecho probatorio*, Republica Dominicana, Ed. Corripio, T.I., page 308). This is not a general privilege but rather one that must be evaluated carefully and construed narrowly. *See Bhatia,* Dkt. 91-2 at *21 (citing *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153 (1986)). The Puerto Rico Supreme Court described the government's burden as proving "in a precise and unequivocal manner the applicability of the privilege." *Bhatia,* Dkt. 91-2 at *21 (citing *Santiago*, 117 D.P.R. 153).

With regard to the 1,457 economic documents, the Board states that disclosing the sensitive financial data and policy in the documents "would have significant impacts upon the economy of Puerto Rico and the generation of government revenue." Dkt. 90 at 40. The Board frames this impact as a foregone conclusion because of its function and role in the Puerto Rico government. *Id.* The Board's broad and repeated forecast of "significantly impacting the Commonwealth's economy" is as specific as it is willing to be about the potential consequences of disclosing these documents. CPI correctly notes that, however ominous these consequences sound, they are not

---

[2] The official translation of Appendix VI is not yet available, and neither party offered a certified translation. Local Rule 5(g) requires materials to be translated into English for the federal court to consider them. The prior Rule 31 of Evidence, which has been translated into English, is "equal to and substantively identical to the current Rule 514," which replaced it by order of the Puerto Rico Supreme Court on September 4, 2009. *See Bhatia,* Dkt. 91-2 at *19 n.14. *Compare* 32A L.P.R.A. Ap. IV R. 31 (1979) *with* 32A L.P.R.A. Ap. VI R. 514 (2009).

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 16 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                                             16

sufficiently specific and provide very little concrete information on which the court may evaluate disclosure's true or likely impact. The Board states only that the information was given to the Board in furtherance of its official duties, relates to the creation of budgets and fiscal plans, and was received in confidence. Dkt. 90 at 40; Jaresko Decl. ¶ 29. Jaresko adds only that "without access to this information, the Board would not be able to adequately develop, certify, and implement fiscal plans and budgets for the Commonwealth and its covered instrumentalities." Jaresko Decl. ¶ 29. In the absence of a discovery log identifying the senders, recipients, or contents, there can be no precise application of the privilege here. The Board claims that "disclosing specific information regarding the contents of the documents or the senders and recipients would vitiate the basis on which it withheld them in the first place." Dkt. 90 at 40. According to the Puerto Rico Supreme Court's decision in *Bhatia* and its predecessor cases, such disclosure is the only way to satisfy the hefty burden of proof necessary for a court to conclude that the privilege outweighs the interests of citizens in their right of access.

With regard to the forty-three documents that would hinder the Board's ability to function, the Board is equally reluctant to satisfy its burden of proof. Instead, the Board leans again on its "unique role" and relationships "critical to its ability to fulfill its mission." Dkt. 90 at 42–43. The seven email chains that constitute these withheld documents were sent between the Board and Congress and between the Board and AAFAF. Dkt. 90 at 42. The Board emphasizes that it is "critical to the functioning of the Board that it be able to communicate in confidence and with candor with both the federal and the Commonwealth government, and likewise for federal and Commonwealth government officials to communicate in confidence and with candor with the Board." *Id.* Disclosure's potential to chill communications is implied, and the Board does not address why its candor would harm the Board's functions.

Instead, the Board complains that CPI has not specifically justified its desire for the documents. Dkt. 90 at 18; Dkt. 99 at 21. As stated, only the Board bears the burden of proof here, though the ultimate decision depends on a balancing test. The referring judge's order at Docket Number 36 found CPI's requests to be acceptable. "Pursuant to Puerto Rico law, CPI, as an

organization that disseminates news, has a right to inspect these documents." Dkt. 36 at 33. "[D]enial of access to public documents has to be properly supported and justified, and cannot be denied arbitrarily and capriciously." Dkt. 36 at 33. (citing *Bhatia,* Dkt. 91-2 at *18). The Board must provide that support and justification, and it has not done so.

The Board attacks that right of access and claims that CPI's general assertions of need for these and other documents must yield in the face of its claim of confidentiality. Dkt. 90 at 41. The Board cites a Puerto Rico Court of Appeals case in which CPI was denied its request for information on whom the governor met with in and outside Puerto Rico dating from his 2009 inauguration through the end of his four-year term. *Centro de Periodismo Investigativo v. Berlingeri*, 2011 WL7268174 (P.R. Ct. App. 2011), *certified translation at* Dkt. 91-1. The Court of Appeals determined that CPI sought excessive access, in part because the information requested, much of which was already publicly available, was excluded from the scope of the right of access because deliberative privilege applied. *Berlingeri*, Dkt. 91-1 at *7–*8. It bears noting that CPI here requests only information that has already been identified and is not publicly available, and there would be less of a burden on the Board because it already analyzed the documents to make its own determinations on confidentiality. To be sure, CPI has not given a precise reason it wishes to exercise the right of public access, but it has been unequivocal. CPI seeks to exercise a fundamental right; as a journalistic enterprise, CPI serves two functions vital to democracy: scrutinizing the government and bringing transparency to government so that others may understand what their government does. The Board's own efforts prevent CPI from being more specific because of the mystery that continues to shroud these documents. Finally, *Berlingeri* is an appellate court decision outweighed by the Puerto Rico Supreme Court's decision in the more-recent *Bhatia*, which assigns to the state the burden to prove its interests outweigh the public's.

The Board's general claims of privilege fail to prove precisely and unequivocally that it has an interest in maintaining confidentiality, let alone that such an interest outweighs "the values protected by this right of freedom of information of the citizens." *Bhatia,* Dkt. 91-2 at *21. These generalizations preclude the court from properly evaluating the negative economic impact to which

Case 3:17-cv-01743-JAG-BJM   Document 108   Filed 07/31/19   Page 18 of 18

Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico
Civil No. 17-1743 (JAG/BJM)                                                                              18

the Board alludes, so the Board must either disclose the documents or provide a privilege log that complies with its burden.

## CONCLUSION

For the foregoing reasons, I recommend that the court deny CPI's motion to compel the disclosure of the law enforcement documents and the fourteen drafts withheld pursuant to PROMESA § 208. This recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas* v. *Arn*, 474 U.S. 140, 155 (1985); *Davet* v. *Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co.* v. *Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden* v. *Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

With regard to the remaining five categories of documents, the Board is ordered to produce a comprehensive, legally-sufficient privilege log to justify its invocation of privilege for each document which it seeks to withhold: documents with claimed deliberative process privilege, common interest privilege, Title III mediation privilege, PROMESA § 208 protections, and official information privilege. The Board need not produce a privilege log for the drafts of PROMESA § 208 reports or the law enforcement documents requested. The Board is granted until August 30, 2019 to produce the privilege logs. Upon review of the logs, CPI may file a further motion to compel, if warranted, specifying which documents or categories of documents do not qualify for protection.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of July, 2019.

                *S/ Bruce J. McGiverin*
                BRUCE J. MCGIVERIN
                United States Magistrate Judge