## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CENTRO DE PERIODISMO INVESTIGATIVO,<br><br>      Plaintiff,<br><br>v.<br><br>FINANCIAL OVERSIGHT AND MANAGEMENT<br>BOARD FOR PUERTO RICO,<br><br>      Defendant. | Civil No. 17-1743 (JAG) |
| FINANCIAL OVERSIGHT AND MANAGEMENT<br>BOARD FOR PUERTO RICO,<br><br>      Defendant-Movant.<br><br>v.<br><br> CENTRO DE PERIODISMO INVESTIGATIVO,<br><br>      Plaintiff-Respondent | |

**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S**
**<u>LIMITED OBJECTION TO REPORT AND RECOMMENDATION</u>**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ........................................................................................................................ 5

**ARGUMENT** ............................................................................................................................. 9

    A.    The Report and Recommendation Does Not Address PROMESA § 105. ................... 10

    B.    The Report and Recommendation Misapplies Commonwealth and Federal Law on the Board's Exceptions to Disclosure. ............................................................................. 13

**CONCLUSION** ........................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*ACQIS, LLC v. EMC Corp.*,
    No. 14-cv-13560, 2017 WL 2818984 (D. Mass. June 29, 2017)............................................13

*Bhatia Gautier v. Rosselló*,
    199 D.P.R. 59 (P.R. 2017) .....................................................................................................16

*Espacios Abiertos, LLC v. E.L.A.*, KLAN201801348 (P.R. Ct. App. Mar. 6, 2019)....................15

*Lockett v. New Orleans*,
    639 F. Supp. 2d 710 (E.D. La. 2009), *aff'd* 2010 WL 1811772 (5th Cir. May
    5, 2010) ...................................................................................................................................1

*OfficeMax, Inc. v. United States*,
    428 F.3d 583 (6th Cir. 2005) ................................................................................................15

*Phinney v. Wentworth Douglas Hosp.*,
    199 F.3d 1 (1st Cir. 1999)......................................................................................................9

*PowerShare, Inc. v. Syntel, Inc.*,
    597 F.3d 10 (1st Cir. 2010).....................................................................................................9

*Rhode Island Dep't of Env'tl Mgmt. v. United States*,
    304 F.3d 31 (1st Cir. 2002).....................................................................................................1

*Rosselló v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt.
    Bd. for P.R.)*,
    330 F. Supp. 3d 685 (D.P.R. 2018) (appeal pending)......................................................11, 12

**STATUTES AND RULES**

PROMESA § 105...................................................................................................... passim

PROMESA § 106(a) .......................................................................................................12

PROMESA § 208...................................................................................................... passim

Fed. R. Civ. P. 72 ..................................................................................................3, 9, 13

To the Honorable United States District Court Judge Jay A. García-Gregory:

The Financial Oversight and Management Board for Puerto Rico (the "Board") respectfully submits this limited objection (the "Limited Objection") to the Report and Recommendation issued by Magistrate Judge Bruce McGivern on July 31, 2019 [ECF No. 108] (the "Report and Recommendation").[1]

### PRELIMINARY STATEMENT

The sole claim in this lawsuit is plaintiff Centro de Periodismo Investigativo's ("CPI") demand that the Board provide it with documents requested in its complaint dated June 1, 2017 [ECF No. 1] (the "Complaint"). CPI seeks a broad swath of documents, including every communication between the Board and the federal or Commonwealth governments. Notwithstanding that section 105 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") provides the Board shall not be liable for claims and obligations resulting from actions taken to carry out PROMESA, which obligations most fundamentally include any obligation to produce documents arising from the Board's work, the Board has voluntarily provided over 18,419 documents, totaling 67,704 pages, to CPI.[2] The Board has not provided certain documents because they fall into one of several grounds for privilege or other recognized assertions of confidentiality. The Board provided information to CPI regarding the

---

[1]     In filing this Limited Objection, the Board reserves all of its rights, including its position that this Court is without jurisdiction over this matter.

[2]     The filing of this Limited Objection, like the filing of the Motion (as defined below), does not constitute a waiver of any of the Board's arguments concerning jurisdiction, sovereign immunity, and the application of PROMESA § 105. *See, e.g.*, *Lockett v. New Orleans*, 639 F. Supp. 2d 710, 724 (E.D. La. 2009), *aff'd* 2010 WL 1811772 (5th Cir. May 5, 2010); *see also Rhode Island Dep't of Env'tl Mgmt. v. United States*, 304 F.3d 31, 49 (1st Cir. 2002) (conducting discovery does not constitute waiver of sovereign immunity defense); Motion (defined *infra*) at 11 n.11.

contours of the withheld documents, including the subject matters they involve, the parties they are between, and the dates of the communications.  Yet, without giving the Board or the Court any reason why it needs these privileged documents aside from a generalized curiosity into the workings of the Board, CPI maintains the Court should ignore the Board's privileges and order it to produce the withheld documents.

The dispute regarding the withheld documents (which consist of communications between the Board and either the federal or Commonwealth governments) was brought to the Magistrate Judge by means of the *Motion of the Financial Oversight and Management Board for Puerto Rico in Compliance with the Court's March 1, 2019 Order* [ECF No. 90] (the "Motion") after Plaintiff raised the matter with Magistrate Judge McGiverin, who then ordered briefing.  In the Motion and the accompanying declaration of the Board's Executive Director, the Board provided CPI and the Magistrate Judge with additional information regarding the nature of the withheld communications, as well as the legal grounds for such withholding.

The resulting Report and Recommendation upheld the Board's position in a number of respects, denying CPI access to two categories of documents sought.  But, with respect to other categories of documents demanded by CPI, Magistrate Judge McGiverin found he lacked "sufficient information to rule" and ordered the Board to provide CPI a "comprehensive, legally-sufficient privilege log to justify its invocation of privilege for each document which it seeks to withhold," other than those which he ruled were properly withheld.[3]  Report & Recommendation at 1, 18.

---

[3]      The Report and Recommendation provides that CPI may then file a motion to compel provision of documents it contends are not protected from disclosure.  Report & Recommendation at 18.

The Board objects only to the portion of the Report and Recommendation requiring it to prepare and provide CPI with a privilege log.[4]  It does so for a number of reasons.  First, ordering the Board to produce these logs is inconsistent with the limitation of liability set forth in PROMESA § 105.  Pursuant to that section, the Board cannot be compelled to provide any documents to CPI, including a privilege log, as long as such documents resulted from actions the Board took to carry out PROMESA.  It is within the Board's discretion to determine whether, when and how its documents, including its communications with the Commonwealth and federal governments regarding Puerto Rico's achievement of fiscal responsibility, are shared.  As such, PROMESA § 105 bars the Magistrate Judge's order compelling the Board to provide CPI with information beyond that which it has already given regarding the documents in question.  Furthermore, the implication of the Report and Recommendation in requiring a privilege log is CPI can challenge documents on the log, and the Court can order the Board to produce documents it determines are not privileged or protected from disclosure.  As the Board argued in its Motion, the Board is protected by § 105 from any obligation to produce documents, and the Board objects to the Report and Recommendation to preserve its exemption and rights under PROMESA.

Second, the Report and Recommendation misapplies Commonwealth law and federal law regarding the scope of documents the Board can withhold even if it did not have the protection of § 105.  For several categories of documents, the Board has already provided CPI with all the information it can without revealing privileged or otherwise protected information; disclosing any additional information would violate an established exception to disclosure.  For example,

---

[4]     On August 12, 2019, CPI filed an objection to the Report and Recommendation.  *See Plaintiff CPI's Objection to the Order Issued by Magistrate Judge McGiverin on July 31, 2019, and Reiteration of CPI's Request for a Finding of Contempt* [ECF No. 109].  The Board intends to file a response to the Report and Recommendation as provided by the applicable rules.

the Board properly withheld documents because they relate to the mediation ordered by the United States District Court for the District of Puerto Rico as part of the Commonwealth's restructuring case under Title III of PROMESA (the "Title III Court").   The mediation is governed by an agreement required by the mediation judges, which agreement requires strict confidentiality.   The Report and Recommendation recognizes the mediation privilege, but suggests because the Board in one instance referred to recipients of documents as "the Title III mediation team and other parties to the Title III mediation," and in another "federal judges who have been appointed to serve as mediators or the clerks and staff who assist them in coordinating and conducting the mediations," some of those documents may not be privileged and a privilege log is required.   Report & Recommendation at 12.   The fact that the Board did not use the same language in two instances to refer to the same parties is a distinction without a difference.   The documents were transmitted as part of and in furtherance of the mediation process – on that there is no dispute.   As such, they are protected by the mediation privilege and by Title III Court order, and no log is necessary to make that determination.

Similarly, the Report and Recommendation requires the Board to produce a privilege log for withheld communications discussing the contents of draft or final versions of the Commonwealth's tax abatement report, even though it acknowledges versions of the report itself are shielded from disclosure pursuant to PROMESA § 208.   As the Board explained in the Motion, disclosure of those communications would disclose "the contents" of the tax abatement reports and is therefore barred by § 208, and a privilege log will not (and under § 208 cannot) provide more detail than what the Board has already provided.   *Reply in Support of Motion of the Financial Oversight and Management Board for Puerto Rico in Compliance with Court's March 1, 2019 Order* [ECF No. 99] (the "Reply"), at 15.   Moreover, the Report and Recommendation's

conclusion that a privilege log is required is premised on a misreading of the restrictions found in PROMESA § 208(b).

Lastly, the Magistrate Judge did not correctly apply the balancing test required by the Puerto Rico Supreme Court for documents withheld pursuant to the deliberative process and official information privilege, as CPI has not provided *any* justification regarding its alleged "need" for the requested communications.  CPI's nearly boundless fishing expedition should not be grounds to require the Board to engage in the time-consuming and costly process of creating a detailed privilege log, particularly as it has already provided significant information about the communications withheld and as CPI – even after having had ample time to review and examine the 18,419 documents the Board has produced – cannot articulate any grounds to justify its request for access to more documents beyond general statements regarding the undisputed importance of a free press.  It was precisely to spare the Board such a time-consuming and costly process that Congress included § 105 in PROMESA.

In light of the foregoing, the portion of the Report and Recommendation requiring the Board to prepare and produce a privilege log should be set aside, and the Report and Recommendation modified to grant the Motion in full.

## BACKGROUND

In its complaint [ECF No. 1] (the "Complaint"), CPI sought an order compelling the Board to produce 16 categories of documents.  On August 29, 2017, the Board moved to dismiss CPI's complaint on jurisdictional grounds and for failure to state a claim.  [ECF No. 22]  On May 4, 2018, this Court denied the Board's motion. [ECF No. 36]  The Board disagreed with the

Court's holdings and has repeatedly reserved its rights regarding those and other grounds for dismissal.[5]

Nevertheless, and because the Board understands the need for transparency, the Board undertook efforts to voluntarily provide CPI with the non-privileged documents sought in the Complaint in the hope of resolving this action in a practical, collaborative way.  Between July and September 2018, the Board completed its responses to all but two of CPI's requests, by providing responsive documents, pointing CPI to public websites where the requested documents were already available, or certifying the documents in question did not exist in the Board's files. The Board subsequently provided documents responsive to the last two requests – which were the broadest and most time-consuming – over the following months, thereby completing its responses to CPI's requests.

The only remaining dispute,[6] and the only issues raised in the Motion and this Limited Objection, relate to those final two requests:  Request (k), for all communications between the Board and the federal government, and Request (l), for all communications between the Board and the Commonwealth government.  The Motion lays out in detail the Board's process in collecting, reviewing and providing CPI with over 18,000 documents, totaling approximately 62,000 pages, responsive to these requests.  Motion at 5-8.

---

[5]     *See, e.g.*, Motion at 1 n.1; *Opposition of the Financial Oversight & Management Board to Plaintiff's Amended Motion for Finding of Contempt and Imposition of Civil Fines* [ECF No. 72], at 1 n.2.

[6]     CPI has raised only one other dispute regarding the documents provided (or not provided) by the Board in response to its requests – its demand for Board members' pre-appointment financial disclosures, which the Board contended were not in its possession and otherwise not subject to the constitutional right to access public documents in Puerto Rico.  The Magistrate Judge agreed with the Board and denied CPI's efforts to obtain those documents.  *See* Report & Recommendation (May 31, 2019) [ECF No. 100] ("May 31 Report & Recommendation") at 7-8. CPI did not challenge that ruling.

In an effort to impugn the Board's credibility, CPI's opposition to the Motion alleged multiple manufactured "discrepancies" and mischaracterizations of the Board's review and provision of the requested communications.   *CPI's Opposition to the Board's Motion in Response to Magistrate Judge's March 1, Order and Reiteration of Request for Contempt Finding* [ECF No. 93] (the "Opposition" or "Opp."), at 5-18.  The Board's reply in support of its Motion addressed CPI's unfounded assertions and provided accurate information as to the parties' interactions.  Reply, at 2-4.  The Board will not repeat that back-and-forth here.  Rather, to summarize, between late 2018 and early 2019, the Board voluntarily provided CPI with 5,615 documents responsive to Request (k) and 12,754 documents responsive to Request (l).  In two letters sent to CPI's counsel soon after the Board provided these communications, the Board explained that it was withholding six categories of documents as privileged or otherwise exempt from production: (1) documents protected under the deliberative process privilege; (2) documents protected by the common interest privilege; (3) documents that were part of the Title III mediation; (4) documents covered by PROMESA § 208(b)'s prohibition of the disclosure of documents related to the commonwealth's tax abatement reports; (5) documents relating to law-enforcement investigations; and (6) documents containing official information that could either impact the Puerto Rico economy if disclosed or that would be harmful to the public interest by impeding the Board's ability to perform its statutory duties.  *See* Motion at 5-7.

The parties appeared before Magistrate Judge McGiverin at a status conference on March 1, 2019.  During this conference, CPI raised various objections to the Board's withholding of documents responsive to Requests (k) and (l) – many of which it voiced for the first time.  CPI launched additional objections to the Board's provision of documents in a letter to the Board sent later that day.  Motion at 7-8.

On April 1, 2019, in compliance with the Magistrate Judge's directive at the March 1 status conference, the Board filed the Motion.  In the Motion, the Board explained why the documents and communications in each of the six categories listed above were properly withheld from CPI under Commonwealth and/or federal law.  Among other bases, the Board argued that PROMESA § 105 precludes the Court from compelling the production of the documents sought by CPI.  *See* Motion at 37-39.  Additionally, in support of the Motion, the Board submitted a declaration from the Board's executive director, Natalie Jaresko, specifically discussing documents withheld pursuant to the deliberative process privilege, communications with law enforcement agencies, and documents containing official information.  *Declaration of Natalie A. Jaresko in Support of the Motion of the Financial Oversight and Management Board for Puerto Rico in Compliance with Court's March 1, 2019 Order* [ECF 90-1] ("Jaresko Decl.").

On July 31, 2019, Magistrate Judge McGiverin issued the Report and Recommendation, in which he recommended this Court deny CPI's request[7] for two sets of documents withheld by the Board:  documents relating to law-enforcement investigations, and fourteen draft tax abatement reports withheld pursuant to PROMESA § 208(b).  Report & Recommendation at 18.[8] As to the remaining categories of documents, the Report and Recommendation stated:

> [T]he Board is ordered to produce a comprehensive, legally-sufficient privilege log to justify its invocation of privilege for each document which it seeks to withhold:  documents with claimed deliberative process privilege, common interest privilege, Title III mediation privilege, PROMESA § 208 protections [other than the actual § 208 reports], and official information privilege.

---

[7]     The Report and Recommendation states that it is "deny[ing] *CPI's motion* to compel the disclosure of the law enforcement documents and the fourteen drafts withheld pursuant to PROMESA § 208."  Report & Recommendation at 18 (emphasis added).  This appears to be a typographical error.  CPI requested these documents in its Complaint, not in a motion, and the Board raised the rationale for not providing them in the Motion.

[8]     The Board does not challenge these rulings.

8

*Id.*  The Report and Recommendation ordered these privilege logs to enable it to "weigh the fundamental interests at stake and determine whether the Board's invocation of . . . privilege will prevail over the public right to access."  *Id.* at 9.  Yet, as the Board has explained, PROMESA § 105 bars the Court from ordering such production.   Moreover, the Report and Recommendation's order is based on erroneous readings of Commonwealth law and federal law. Accordingly, the Board objects to this portion of the Report and Recommendation and files this Limited Objection pursuant to Rule 72(a) of the Federal Rules of Civil Procedure.

## ARGUMENT

A party may file an objection to a magistrate judge's written order on a non-dispositive matter within 14 days of service of a copy of that order.  Fed. R. Civ. P. 72(a); *see also* Local R. 72(c).  The district judge must review the objection and modify or set aside any part of the order that is clearly erroneous or is contrary to law.  Fed. R. Civ. P. 72(a).  Under the "clearly erroneous" standard, the reviewing court "must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [it] form[s] a strong, unyielding belief that a mistake has been made."  *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (citation omitted).  Similarly, under the "contrary to law" standard, for pure questions of law, "there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s *de novo* standard."  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

The Report and Recommendation is contrary to law.  It fails to recognize binding federal law, namely PROMESA § 105, which insulates the Board from the obligation the Report and Recommendation seeks to impose.  Additionally, it misapplies privilege and confidentiality standards under both Commonwealth and federal law, namely the mediation privilege, the prohibition against disclosure of documents and the directive to protect confidential taxpayer

information imposed on the Board by PROMESA § 208, and the balancing test required under Commonwealth law for invocation of the deliberative process and official information privileges. Accordingly, the order in the Report and Recommendation that the Board produce a "comprehensive, legally-sufficient privilege log" for each of the five categories in the quote excerpted above should be set aside and the Board's Motion granted in full.

### A.      The Report and Recommendation Does Not Address PROMESA § 105.

As the Motion (at 37-39) and Reply (at 5) explained, PROMESA § 105 precludes the Court from, among other things, ordering the Board to provide any documents to CPI. Necessarily, this prohibition also includes requiring the Board produce a privilege log. Therefore, the portions of Report and Recommendation ordering the Board to produce a privilege log are not in accordance with federal law, should be set aside by this Court, and the Report and Recommendation should be modified to grant the Motion in full.[9]

PROMESA § 105 states: "The Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees or the territorial government resulting from actions taken to carry out [PROMESA]."  In enacting PROMESA, Congress recognized the Board's full attention would be required to comply with its duties and oversee the Commonwealth's return to economic stability.  Congress therefore enacted measures such as PROMESA § 105 to insulate the Board from lawsuits that would distract it from its task of managing the Commonwealth's recovery efforts or would deter it from acting in accordance with its duties.  Accordingly, the Title III Court has dismissed claims that sought to impose liability on the Board based on acts taken to carry out PROMESA on § 105

---

[9]      In its prior Report and Recommendation in this proceeding, the Magistrate Judge held, in *dicta*, that PROMESA § 105 does not "immuniz[e]" the Board from actions seeking to compel it to provide documents. May 31 Report & Recommendation, at 6.  The Board filed a limited objection to that Report and Recommendation [ECF No. 101], which is currently pending.

grounds.  *See UTIER v. PREPA*, Adv. Proc. No. 17-ap-229-LTS, slip. op. at 29 (D.P.R. Sept. 26, 2018) [ECF No. 62], at 29.  Conversely, when an action against the Board did not seek to impose on the Board a liability or an obligation (such as in an action for a declaratory judgment), the Title III Court ruled on the action's claims.  *See, e.g.*, *Rosselló v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 330 F. Supp. 3d 685, 694-97 (D.P.R. 2018) (appeal pending).

The Motion explained that inherent in the Board's duties under PROMESA is its need to create, maintain, use, and protect documents.  Motion at 37-38.  This is especially apparent for the documents CPI seeks from the Board here – communications between the Board and the Commonwealth and federal governments.   To engage in its Congressionally-mandated responsibilities, the Board must be free to communicate with the Commonwealth and federal governments and maintain records of those communications without interference from third parties.  *Id.* at 38.  Similarly, through its passage of § 105, Congress recognized the Board needed to be protected from suits that would impose obligations on it such as to locate, review, screen for privilege, and produce thousands of documents (or detailed privileged logs), as doing so would distract it from its Congressional mandate.  *Id.*

There is no dispute that the communications to be covered in the privilege log required by the Magistrate Judge were generated as part of the Board's compliance with its duties under PROMESA.  *See* Compl. at 5.16 ("[CPI] has attempted to obtain documents which are critical for providing the citizens of Puerto Rico with the access to information . . . to allow the CPI, as an important and respected news organization, to provide information to the citizens regarding the operations of the [Board].").  Accordingly, these communications, as well as the Board's

decisions regarding their storage, maintenance and production, are squarely within the ambit of § 105.[10]

In its prior report and recommendation, the Magistrate Judge ruled that PROMESA § 105 does not grant the Board "wholesale immunity."   May 31 Report & Recommendation, at 6.   However, as the Board noted in its pending limited objection to that report and recommendation, the Board has never claimed that § 105 grants it such wholesale immunity.   *See Limited Objection of the Financial Oversight & Management Board for Puerto Rico to Report and Recommendation* [ECF No. 101], at 6.   Rather, the relief CPI seeks in *this* action – an injunction demanding the Board provide CPI with whatever documents it requests – is unavailable.   To be sure, the Board has provided CPI with thousands of documents since the initiation of this lawsuit.   But the Board has been clear that it was providing such documents voluntarily and in the spirit of cooperation.   *See, e.g.*, Oct. 26, 2018 Letter from G. Brenner to J. Berkan [ECF No. 93-1 at 16].

The Report and Recommendation's requirement that the Board produce detailed privilege logs for documents withheld pursuant to the deliberative process privilege, the common interest privilege, the mediation privilege, PROMESA § 208, and the official information privilege is contrary to § 105 because the only claim for relief in this case is a claim against the Board for the documents themselves.   Therefore, the Report and Recommendation should be set aside under Rule 72(a), and Board's Motion should be granted in full.

---

[10]      As noted in the Reply (at 5-6), the Board explained its reading of PROMESA § 105 does not render other provisions of PROMESA, namely § 106(a), superfluous.   This is buttressed by the Title III court's analysis of PROMESA § 105 in two separate opinions.   *See UTIER v. PREPA*, Adv. Proc. No. 17-229-LTS (D.P.R., Sept. 26, 2018) [ECF No. 62], at 29 (dismissing claim against Board on PROMESA § 105 grounds); *Rosselló*, 330 F. Supp. 3d at 694-97 (finding court had jurisdiction for action brought by Governor that did not seek to make the Board liable for any obligations or liabilities).   Because the Report and Recommendation is silent on PROMESA § 105 entirely, it did not address this issue.

**B.   The Report and Recommendation Misapplies Commonwealth and Federal Law on the Board's Exceptions to Disclosure.**

The Report and Recommendation also misstates Commonwealth law as to what types of documents may be withheld and, for at least 4 categories of documents withheld by the Board, is clearly erroneous.

*First*, as to documents relating to the Title III mediation, the Report and Recommendation recognizes but then misapplies the standard for withholding mediation communications.   The Report and Recommendation appears to take issue with the slight clarification in the Board's description of these documents, from "confidential communications and attachments transmitted between and among the Board and its staff, the Title III mediation team and other parties to the Title III mediation" (Report & Recommendation at 12 [citing ECF 65-3 at 1]) to "communications to, from or copying the federal judges who have been appointed to serve as mediators or the clerks and staff who assist them in coordinating and conducting the mediations" (*id.* (citing Motion at 32)).   It is self-evident that there is no material difference in these descriptions for purposes of determining whether the documents were correctly withheld. The Motion explains (at 25-28) that certain documents were not provided because they related to the ongoing confidential mediation ordered by the Title III Court.   Communications related to mediations are protected by the mediation privilege, which insulates from disclosure "communications to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation." *ACQIS, LLC v. EMC Corp.*, No. 14-cv-13560, 2017 WL 2818984, at *2 (D. Mass. June 29, 2017).   In addition, these documents are protected by the Title III Court's express order that *all* communications related to the investigation must remain "confidential." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No.

13

17-bk-3283 [ECF Nos. 329, 430].  Whether the documents in question were provided to a federal mediator, a member of the mediator's staff, or to other members of the Title III Court's mediation team, is not a factor either in the test for determining the scope of mediation privilege, or in the directives provided by the Title III Court.  As such, there is no basis for compelling the Board to provide a privilege log for these documents, particularly given that providing additional information about these documents, notably whether they were sent directly to the mediator or to a member of the mediator's staff, would not provide CPI or the Court with any additional relevant information from which to assess the assertion of privilege.[11]

*Second*, the Report and Recommendation misapplies PROMESA § 208.  That provision is clear:

> the members and staff of the Oversight Board shall not disclose the contents of the report described in this subsection, and shall otherwise comply with all applicable territorial and Federal laws and regulations regarding the handling of confidential taxpayer information.

PROMESA § 208(b)(2).  As explained in the Motion (at 28) and the Reply (at 14), the Board withheld only documents the disclosure of which would reveal the "contents" of tax abatement reports, and has already provided CPI with all the information it can about these communications without running afoul of PROMESA § 208(b)'s prohibition and directive to protect the contents of those reports.

The Report and Recommendation correctly recognized CPI could not obtain drafts of the tax abatement report, but ordered the Board to produce a privilege log for communications discussing the contents of the report based on a misreading of § 208 and the assumption that

---

[11]     This is especially true because the Board may not provide additional substantive information about the documents withheld on this basis, given the mediation team's requirement that the Title III Court "adopt a zero-tolerance policy with respect to" disclosure of the mediation process and proceedings.  *See* Motion at 26 (citing *Notice of Breach of Mediation Confidentiality*, Case No. 17-bk-3283 [ECF No. 1836], at 1).

some of the withheld documents "may also contain information that is not confidential" or unrelated to the contents of the tax abatement reports.  *See* Report & Recommendation at 13. Specifically, the Report and Recommendation reads the portion of § 208(b)(2) that requires the Board to "otherwise comply with all applicable territorial and Federal laws and regulations regarding the handling of confidential taxpayer information" as limiting the scope of the prohibition on disclosure in the first clause of § 208(b)(2), and then relies on Statement Number 77 of the Government Accounting Standards Board to import additional requirements not found in § 208.  *Id*. at 13-14.  But this is a misreading of § 208(b)(2), which provides that the "Board shall not disclose the contents" of tax abatement reports "***and*** shall otherwise comply with all applicable territorial and Federal laws and regulations regarding the handling of confidential taxpayer information."  PROMESA § 208(b)(2) (emphases added).  The second clause is an additional requirement on the Board, and relates to information beyond the "report" – it does not in any way limit the scope of the general prohibition on disclosure concerning the report's contents set forth in § 208(b)(2).[12]  *See, e.g., OfficeMax, Inc. v. U.S.*, 428 F.3d 583 (6th Cir. 2005) (traditional canon of statutory interpretation presumes "that 'and' carries a conjunctive connotation").

*Third*, the Report and Recommendation does not correctly apply the balancing test required under Commonwealth law for documents withheld pursuant to the deliberative process privilege and the official information privilege.  The Puerto Rico Supreme Court has held that, to

---

[12]     The Report and Recommendation's reliance on *Espacios Abiertos, LLC v. E.L.A.*, KLAN201801348 (P.R. Ct. App. Mar. 6, 2019) [certified translation at ECF No. 91-3], is similarly misplaced.  Report & Recommendation at 14.  There, the court did not consider the parameters of § 208 as applicable here, as it considered whether that section limits disclosure *by the Commonwealth government* of the contents of the tax abatement report.  [ECF No. 91-3, at 23]  The *Espacios* court recognized that § 208 bars the Board from producing the contents of the reports, but noted that § 208 does not prohibit any action by the Commonwealth government.  *Id*.

determine whether government documents may be withheld pursuant to either of these privileges, the court must engage in a balancing of interests, "weigh[ing] on one hand, the need that the government keep certain sensitive information confidential and the prejudice [to] the government and on the other hand, *the need of the party that requests the information* and his right to obtain it." *Bhatia Gautier v. Rosselló*, 199 D.P.R. 59 (P.R. 2017) (citation omitted) (emphasis added).[13]  As explained in the Motion (at 18-19), the Board provided the requisite information under this standard in its correspondence to CPI.  The Board then provided additional information regarding these documents in the Motion, along with a declaration from its Executive Director.  *Id.* at 19-20.  CPI, on the other hand, has provided *no* information regarding its alleged need for these communications other than general platitudes.

Although the Report and Recommendation (at 8-9) criticizes the Board for being too general in its withholding of documents pursuant to the deliberative process privilege, it is CPI who has not met the requirements of *Bhatia*.  For example, with respect to documents covered by the deliberative process privilege, the Board provided detail about the bases for withholding certain documents from the production, such as the need for the Board and its advisors to be free to explore issues related to their statutory mandate with the Commonwealth and federal governments without the overhang of future disclosure or subsequent proceedings questioning why certain decisions were or were not made.  Jaresko Decl. ¶ 13.  To that end, the Board explained its need for frank communications with the Commonwealth and federal governments regarding the creation, revision, and certification of fiscal plans for the Commonwealth and its territorial instrumentalities (*id.* ¶¶ 15-18), the implementation of "critical projects" as defined by Title V of PROMESA (*id.* ¶¶ 20-21), and contract reapportionment (*id.* ¶¶ 22-23).  The Board

---

[13]     A certified translation of this case was submitted contemporaneously with the Motion. [ECF No. 91-2]

provided similar detail regarding both categories of documents withheld under the official information privilege. *Id.* ¶¶ 29 ("Although I am unable to describe the information the Board has withheld [as potentially affecting the Puerto Rico economy] in detail without breaching these confidentiality concerns, . . . without access to this information, the Board would not be able to adequately develop, certify, and implement fiscal plans and budgets for the Commonwealth and its covered instrumentalities."), 30 ("Given its unique role, it is essential for the Board to maintain strong relationships with members of the Commonwealth and federal governments. . . . [I]t is my opinion that the[] release [of certain documents] would be harmful to the Board's relationships with its counterparts in the Commonwealth and federal governments, and would therefore impede the Board's ability to fulfill its mission.").

In contrast, and as the Board explained in the Reply (at 9), CPI's only explanation for why it needs every communication the Board had with the Commonwealth and federal governments is that its requests are "intrinsically linked to the oversight of governmental activity." Opp. at 31. If this type of generalized rationale is sufficient to attack the Board's invocation of privileges protecting governmental documents, then the privilege and balancing test has no practical effect at all.[14]

## **CONCLUSION**

For the foregoing reasons, the Court should set aside the portions of the Report and Recommendation that require the Board to produce a privilege log detailing the communications withheld in the Motion, and modify the Report and Recommendation to grant the Board's Motion in its entirety and provide all other further relief that is warranted.

---

[14]     Relatedly, CPI's generalized claim that it needs documents from the Title III mediation, without any particular rationale as to their importance or any limitation as to the topics discussed in or dates of the documents they seek, cannot overcome the Title III Court's order or the mediation privilege.

*[Remainder of Page Intentionally Left Blank]*

Dated:  August 14, 2019
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
dvelawoffices@gmail.com

**DEL  VALLE  EMMANUELLI  LAW
OFFICES**
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel.: 787-977-1932
Fax: 787-722-1932

*/s/ Guy Brenner*
Guy Brenner (*pro hac vice*)

**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 0004
Tel.: 202-416-6800
Fax: 202-416-6899
Email: gbrenner@proskauer.com

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on August 14, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, and all CM/ECF participants in the case.

*/s/ Luis F. del Valle Emmanuelli*
Luis F. del Valle Emmanuelli
USDC No. 209514
devlawoffices@gmail.com

**DEL VALLE EMMANUELLI LAW OFFICES**
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932

*Attorney for the Financial Oversight and Management Board for Puerto Rico*